**UNITED STATES of America, Plaintiff,**

*v.*

**Aleksandrs V. LAURINS, Defendant.**

**No. CR–87–0170 SAW.**

United States District Court,
N.D. California.

June 2, 1987.

Brian Shaughnessy, Lawrence A. Merryman and Marvin S. Cahn, San Francisco, Cal., for defendant.

## ORDER

WEIGEL, District Judge.

Defendant Laurins is charged with obstruction of justice (18 U.S.C. § 1505) and criminal contempt (18 U.S.C. § 2, 401(3)). The indictment alleges that he obstructed an IRS investigation of Gold Depository & Loan Company, Inc. ("GDL") controlled by him. It also alleges that he disobeyed an order made by this Court in *United States v. Sandfort*, C–84–2075 SAW, to enforce an IRS summons for GDL documents. In *Sandfort*, the Court held GDL in contempt for failing to comply with the order and fined GDL $1,000 per day for each day it continued to disobey the order. The government finally obtained the documents it sought when the FBI executed a search warrant at Laurins' San Francisco home in October, 1986. Thereafter the Court reduced to judgment the contempt sanction against GDL.

Laurins moves to suppress all evidence found in his home as a result of execution of the search warrant, for discovery of various information and materials, and for permission to act as co-counsel.

## I. MOTION TO SUPPRESS

Defendant argues that the evidence found in his home should be suppressed because the warrant authorizing search did not meet the requirements of the fourth amendment.

The Court finds no reason to disturb the Magistrate's determination of probable cause to believe GDL records would be found in Laurins' home. The Court must uphold the Magistrate's determination if the totality of the circumstances provide a substantial basis for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Fannin*, 817 F.2d 1379, 1381 (9th Cir.1987). Further the Court must give great deference to the Magistrate's determination. *Gates*, 462

Joseph P. Russoniello, U.S. Atty., and Jay R. Weill, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

U.S. at 236, 103 S.Ct. at 2331; *Fannin,* at 1381.

■ The probable cause determination was based on the statements of Cynthia Van Praag, Tracy Higginbotham, and an anonymous informant, "Phil Harris." Laurins argues that these informants are not reliable. Although they do not have a proven track record, the totality of circumstances shows their statements to be reliable. Van Praag and Higginbotham each had inside knowledge of Laurins' operations. (Affidavit supporting search warrant pp. 2–5, attached to Weil Declaration (hereafter "Affidavit")) Harris told an IRS agent many detailed facts about Laurins that the IRS was able to corroborate through Van Praag and Higginbotham. (Affidavit pp. 9–10) Further, the statements of all three informants are consistent with each other.

■ Defendant attacks the credibility of Van Praag and Higginbotham by asserting that they embezzled money from Laurins' companies. This probably refers to an incident involving distribution of commissions to Laurins' employees whom Laurins allegedly refused to pay. The "embezzlement" was disclosed to the Magistrate (Affidavit p. 5), and the Magistrate was justified in finding that it did not destroy the reliability of the informants.

■ Defendant also argues that the statements of the informants do not provide a substantial basis for concluding that Laurins kept GDL records in his home. Van Praag and Higginbotham never saw GDL records in Laurins' home. However, direct evidence is not needed; probable cause exists if it would be reasonable to seek the evidence in the place to be searched. *See United States v. Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986).

The informants' statements showed a sufficient relationship connecting the alleged crimes, the GDL records, and Laurins' home to support the Magistrate's determination that it was reasonable to seek the records in Laurins' home. Harris stated that Laurins kept most of his business records at home. (Affidavit p. 79)

Higginbotham stated that he had phone conversations regarding GDL with Laurins while Laurins was at home. Based on the content of the conversations, Higginbotham concluded Laurins must have had GDL files at home. Laurins also told Higginbotham that he took work home with him at night. Higginbotham often saw Laurins go to and from work with a large briefcase. Further, in late 1984 the GDL office ordered file cabinets for Laurins' home. After Laurins told GDL employees that GDL had been sold to a London company and the records had been removed from San Francisco, Laurins was able to give GDL records to an employee one day after she made a request for them. (Affidavit p. 81) Van Praag stated that the basement and attic in Laurins' home are finished and contain ample room for storage of records. (Affidavit p. 78)

■ Laurins argues that the information in the affidavit regarding records at Laurins' office on Union Street (a warrant was issued to search that office) was stale. Laurins correctly states that the affidavit must support probable cause at the time the warrant was issued. *See United States v. Freeman,* 685 F.2d 942, 951 (5th Cir.1982). However, the government found the GDL records at Laurins' Clay Street home, not at the Union Street office. Thus, Laurins' argument is irrelevant.

■ The staleness argument could be made with respect to the warrant to search Laurins' home. Van Praag and Higginbotham left Laurins' employ several months before the warrant was issued. Thus the affidavit does not contain direct evidence that Laurins continued to have GDL records in his home when the warrant was issued. However, the passage of time does not necessarily control. *United States v. Reid,* 634 F.2d 469, 473 (9th Cir. 1980). The nature of the criminal activity and the kind of property sought are important factors. *Id.* Here, it was reasonable for the Magistrate to think that Laurins' business records remained at his home. The affidavit showed that Laurins kept business records at home; such behavior was likely to continue. The Court defers to

the Magistrate's determination of probable cause.

Laurins claims the warrant is defective because it did not state with particularity the GDL records sought. However, the affidavit contains statements by Van Praag and Higginbotham about the kinds of records GDL generated as well as a statement by an IRS agent about the kinds of business records GDL would be likely to generate. (Affidavit pp. 65–67) The warrant lists the kinds of documents mentioned by Van Praag, Higginbotham, and the IRS agent. (Search Warrant, Attachment A, attached to Weil Declaration (hereafter "Warrant")) These records are related to the crimes described in the warrant and affidavit. Moreover, the Magistrate required the affidavit to accompany the warrant during the search to assist the government agents in "identifying and particularizing" the property to be seized. Thus the warrant is sufficiently particular.

Laurins complains that in executing the warrant to search the Union Street office, the government improperly searched the desk of one of Laurins' attorneys. However, the search of the Union Street office is irrelevant to Laurins' motion to suppress the fruits of the search of his house.

Laurins has not alleged facts to support his claim that the warrant was based on interception of his mail.

Even if the warrant is defective, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984) ("good faith exception" to warrant requirement). Laurins has not alleged

that the Magistrate abandoned his detached and neutral role. Laurins does assert that the government was dishonest and reckless in preparing the warrant. He argues that the government's warrant application stated that he kept records in his home, and the government knew that statement was false because Van Praag and Higginbotham told a government agent that Laurins' records had been moved to 19th Avenue. However, Van Praag and Higginbotham never stated that Laurins moved *all* of his records to 19th Avenue. Thus, there is no evidence that the government made a false statement or was reckless. Laurins also argues that the "embezzlement" by Van Praag and Higginbotham shows the government's bad faith. As noted earlier, the government disclosed the alleged embezzlement to the Magistrate. Laurins further claims the government's destruction of computer tapes and records seized in the search shows the government's bad faith. The fact is information stored in a computer was lost when a government agent accidentally dropped the computer the government had seized from the Union Street office. There is no indication that the government deliberately damaged the computer. Moreover, the government has agreed to give defendant possession of the computer so defendant can attempt to repair it.

Finally, even assuming the probable cause issue is close, the affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. at 3420. Consequently, the Court will deny Laurins' motion to suppress.[1]

## II. MOTION FOR DISCOVERY

The government has agreed to provide discovery of all material covered by Federal Rule of Criminal Procedure 16. The government also has agreed to provide

---

1. At the suppression hearing, Laurins requested an evidentiary hearing. An evidentiary hearing should be held only if the motion to suppress alleges specific detailed facts which, if proved, would require the Court to grant relief. *Cohen v. United States*, 378 F.2d 751, 760 (9th Cir. 1967), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1968); *see also Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Laurins has alleged no such facts.

witness statements twenty-four hours before each witness' scheduled testimony. *See* Jencks Act, 18 U.S.C. § 3500. The Court will not issue an order compelling discovery of material the government agrees to provide. *See United States v. Hearst*, 412 F.Supp. 863, 867 (N.D.Cal. 1975).

The government opposes providing pretrial discovery of material not covered by Rule 16. In particular, the government asserts that criminal discovery rules do not entitle defendant to pretrial discovery of names and addresses of prospective government witnesses or persons who have knowledge of the case, statements made by such persons, criminal records of government witnesses, grants of immunity to witnesses, reports by government investigators, and information relating to evidence that was lost while in the hands of the government. The Court agrees that pretrial discovery rules do not require disclosure of such material. *See* Fed.R.Crim. Proc. 16; Jencks Act, 18 U.S.C. § 3500; *United States v. Sukumolachan*, 610 F.2d 685, 688 (9th Cir.1980) (witness list); *United States v. Walk*, 533 F.2d 417, 420 (9th Cir.1975) (witness statements); *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir.1984) (statements of persons the government did not intend to call as witnesses at trial).

 Even though the discovery rules may not require disclosure of the above material, due process requires disclosure of any arguably exculpatory material. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For example, *Brady* may require disclosure of the names and addresses of witnesses to the crimes charged in the indictment whom the government does not intend to call as witnesses at trial. *See United States v. Cadet*, 727 F.2d 1453, 1468–69. Likewise, criminal records of government witnesses, favors and deals given to government witnesses, and grants of immunity given to government witnesses are exculpatory. *See United States v. Rinn*, 586 F.2d 113, 119 (9th Cir.1978). However, the govern-

ment need not disclose this material prior to the direct examination of the relevant witness. *Brady* also requires disclosure of exculpatory statements of witnesses and nonwitnesses, as well as exculpatory reports by government investigators. Information relating to evidence lost while in the government's control also may be exculpatory. The government has stated that it will comply with its *Brady* obligations. Consequently, although the Court has discretion to order pretrial disclosure of *Brady* material (*United States v. Starusko*, 729 F.2d 256, 261 (3d Cir.1984)), it will not do so in the absence of some indication that the government refuses to disclose *Brady* material. *See Hearst*, 412 F.Supp. at 867. Defendant may renew his motion to compel disclosure if the government fails to comply with its discovery or *Brady* obligations.

### III. MOTION FOR DUAL REPRESENTATION

 Defendant does not have an absolute right to both self-representation and assistance of counsel. *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir.1981). The Court finds that the circumstances of this case, including the volume of documents, do not justify permitting defendant to act as co-counsel. *See United States v. Kimmel*, 672 F.2d 720, 721 (9th Cir.1982) (questioning efficiency of allowing defendants to act as co-counsel).

Accordingly,

IT IS HEREBY ORDERED as follows:

(1) Defendant's motion to suppress is denied.

(2) Defendant's motion for discovery and inspection is denied.

(3) Defendant's motion for dual representation is denied.