**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Aleksandrs V. LAURINS, Defendant–Appellant.**

**No. 87–1251.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1988.

Decided Sept. 8, 1988.

Brian W. Shaughnessy, of Shaughnessy, Borowski & Gagner, Washington, D.C., for defendant-appellant.

Jay R. Weill, Asst. U.S. Atty., Tax Div., U.S. Dept. of Justice, San Francisco, Cal., for plaintiff-appellee.

Before BOOCHEVER and NORRIS *, Circuit Judges, and STEPHENS, Jr.**, District Judge.

BOOCHEVER, Circuit Judge:

Laurins appeals his conviction of obstruction of justice and aiding, abetting, and causing contempt of court, in connection with an Internal Revenue Service investigation of Gold Depository and Loan Company, Inc. He contends there was insufficient evidence to support his conviction, that he was denied a fair trial by judicial and prosecutorial misconduct, that evidence and testimony at trial were improperly admitted, and that the district court erred in imposing consecutive sentences. We affirm.

## FACTS

In October 1983, the IRS selected for investigation Gold Depository and Loan Company, Inc. (GDL) for allegedly promot-

ing and selling an abusive tax shelter. GDL was one of the Co-op Banking Group Companies, sharing offices on Union Street in San Francisco. The Companies' promotional materials listed Aleksandrs Laurins, a former IRS attorney, tax planner, and real estate developer, as managing director. The tax shelter under investigation was GDL's "Dry Cargo Marine Container Purchase Program," under which a typical investor might buy $100,000 worth of marine cargo containers with $4,000 down. GDL would arrange for financing of the unpaid balance. GDL advised the investor that he or she could then take an investment tax credit of 10% or $10,000, as well as a depreciation deduction of $15,000, on his or her tax return in the year of investment.

The IRS sent a letter to GDL in November 1983 informing it of the investigation and requesting certain documents. Attorney Bart Lee, whom Laurins had hired in January 1982 to represent both GDL and himself, requested more time to respond. No records were ever produced. On January 5, 1984, an IRS summons was served on GDL, requiring the production for inspection and copying of all books and records for 1982 and 1983 related to the investment scheme. Lee informed the IRS that GDL was no longer doing business in San Francisco and that its only office was in Maryland, and took the position that the summons therefore was not properly served. GDL allegedly did business in San Francisco until December 31, 1983, shortly after it learned of the IRS investigation, although evidence at trial disputed that date. Laurins also claimed at trial that GDL had been sold to another company in the Co-op Banking Group, Mortgage Guaranty Trust, although he could produce no documentation of the sale.

GDL produced no documents. In April or May of 1984, Union Street employees boxed company records at Laurins' request. He then removed the boxes from

---

* Judge Norris was drawn to replace Judge Anderson.

** Honorable Albert Lee Stephens, Jr., United States District Judge for the Central District of California, sitting by designation.

the office and on several subsequent occasions produced copies of documents from the boxed records for at least one employee.

On July 12, 1984, the district court issued an order to enforce the summons, directed to Sandy Sandfort, GDL's vice president, and to GDL. A month later, GDL's purported president, Charlene Baden, met with the IRS but raised her fifth amendment privilege and again produced no records. The district court then issued an amended order requiring GDL to designate an agent to testify without invoking personal privileges against self incrimination. The agent GDL appointed, however, produced no records and could answer few questions.

The district court entered an order of contempt against GDL on June 3, 1985 for willfully failing to comply with the summons. Despite a fine of $1,000 each day no documents were produced, GDL still did not comply.

On October 3, 1986, pursuant to a search warrant, the FBI seized approximately twenty-one boxes of business records (GEX 70) from Laurins' home on Clay Street in San Francisco. The records carried the GDL name on nearly every page. On March 6, 1987, a two-count indictment charged Laurins with obstruction of justice, 18 U.S.C. § 1505 (1982), and aiding, abetting, and causing contempt of court, 18 U.S.C. §§ 2 (1982) and 401(3) (1982). After a trial in June 1987, a jury convicted Laurins on both counts. The district court imposed consecutive sentences of five years on the obstruction count and three years on the contempt count, as well as a $250,000 fine on the obstruction count.

## ANALYSIS

### I. Sufficient Evidence

There is sufficient evidence to support Laurins' conviction if, viewing the evidence in the light most favorable to the prosecution, any rational jury could have found the elements of the crime beyond a reasonable doubt. *United States v. Vaccaro*, 816 F.2d 443, 454 (9th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987).

### A. Aiding, Abetting, and Causing GDL's Contempt of Court

Laurins first argues that because criminal contempt requires the willful disobedience of a court order, and GDL did not act willfully in refusing to produce documents for the IRS, his conviction for aiding, abetting, and causing must fail for lack of a principal.

■ Title 18 U.S.C. § 401(3) gives a federal court the power to punish "by fine or imprisonment, at its discretion … [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Willfulness is an essential element of criminal contempt. *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986). Although willfulness is not *required* for a finding of civil contempt, civil contempt may be based on willful behavior. "The same conduct may result in both civil and criminal contempt charges." *United States v. Rose*, 806 F.2d 931, 933 (9th Cir. 1986) (per curiam).

Whether contempt is civil or criminal depends on the intended effect of the penalty imposed. If the intent is remedial, or if the penalty is conditional in that it is meant to compel the defendant to act, the contempt is civil. If the intent is punitive and the penalty is unconditional, the contempt is criminal. *Hicks ex rel. Feiock v. Feiock,* — U.S. ——, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988).

■ The district court in the contempt action against GDL found that GDL's failure to comply with the order enforcing summons was willful, and imposed a fine of $1,000 per day until GDL produced the records. The fine was waived if GDL complied within 30 days. This penalty clearly was intended to coerce GDL to comply as GDL could avoid the fine by prompt compliance, and was therefore a civil contempt order. *Id.*

■ Laurins insists, despite the language in the contempt order, that no evidence of GDL's willfulness was ever produced. Even if no such evidence existed, this is irrelevant. The indictment charged

Laurins with a violation of 18 U.S.C. § 2. This "aiding and abetting" statute provides that one who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b). This court has recently held that under section 2(b) "the government need not prove that someone other than the defendant was guilty of the substantive crime. A person who causes the commission of an offense is punishable as a principal even though the person who completes the wrongful act violates no criminal statute because of lack of criminal intent or capacity." *United States v. Causey,* 835 F.2d 1289, 1292 (9th Cir.1987). The intent of the person actually performing the proscribed act is immaterial in a section 2(b) prosecution. *Id.* It therefore does not matter whether at Laurins' trial GDL was shown to have acted willfully.[1] The relevant issue was whether Laurins acted willfully in aiding, abetting, and causing the commission of contempt. It is not disputed that the jury was properly instructed on the requirement of willfulness for Laurins' conduct.

■ Laurins also argues that he had disassociated himself from GDL by the time the summons issued, and because he was neither GDL's agent nor its representative, and because the company itself had been sold, he had no obligation to respond to the summons and cannot be held in contempt for willful failure to comply with the court order enforcing it.

■ It is Laurins' failure to obey the court order, not the summons itself, that is at issue in his conviction for contempt. A court order binds parties and those in active concert with parties who have actual knowledge of the order. Fed.R.Civ.P. 65(d); *United States v. Baker,* 641 F.2d 1311, 1314 (9th Cir.1981). A nonparty may be held liable for contempt if he or she either abets or is legally identified with the

named defendant. *NLRB v. Sequoia Dist. Council of Carpenters,* 568 F.2d 628, 633 (9th Cir.1977). Those not legally identified with a party but actively in concert with the party must have actual knowledge of the order to be bound. *Id.*

■ An order to a corporation binds those who are legally responsible for the conduct of its affairs. *NLRB v. Maine Caterers, Inc.,* 732 F.2d 689, 691 (1st Cir. 1984); *see United States v. Wilson,* 221 U.S. 361, 376, 31 S.Ct. 538, 542–43, 55 L.Ed. 771 (1911). De facto as well as de jure officers are responsible for enabling a corporation to comply with orders directed to it. *United States v. Seetapun,* 750 F.2d 601, 607 (7th Cir.1984).

Although Laurins insisted that he had no legal connection with GDL after its purported sale, there was ample evidence at trial that he continued to exercise at least de facto control over the company after the summons issued. Laurins authorized Lee to represent GDL before the IRS in late 1983, and met with Lee to discuss the investigation a number of times thereafter. Bank records examined by the IRS showed that Laurins signed $4,200,000 in GDL checks from San Francisco checking accounts in January through April of 1984, and Laurins remained the only person able to sign checks on GDL accounts without a cosignor. In the fall, after the order enforcing the summons issued in July 1984, Laurins sent a Union Street employee to the corporate offices of the Co-op Investment Bank in St. Vincent, British West Indies, to create "records" of lease income from the containers, and provided him with a suitcase full of GDL documents.

■ Even if there were no evidence of Laurins' continuing control of GDL, his concealment of the records in his home certainly constitutes abetting GDL's failure to comply. As a party in active concert with GDL who had actual knowledge of the order through Lee, his attorney, Laurins

---

1. The district court, however, did instruct the jury that "you may not find the defendant guilty unless you find beyond a reasonable doubt that every element of the offense was committed by some person or persons, that the defendant par-

ticipated in the commission." The jury apparently could find Laurins guilty of aiding and abetting even under the standard urged by Laurins.

properly could be found in contempt for aiding and abetting GDL.

### B. Obstructing Justice

Laurins argues that the evidence on this count was insufficient because the government failed to show (1) that the records found in his home, Government Exhibit 70 (GEX 70), were the records called for in the IRS summons, and (2) that he had the specific intent necessary to violate the statute.

18 U.S.C. § 1505 provides in part:

> Whoever corruptly ... influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States ... [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.

■ Submitting false documents in response to an IRS subpoena is a violation of section 1505. *United States v. Vixie*, 532 F.2d 1277, 1278 (9th Cir.1976) (per curiam). Section 1505 is similar in language to 18 U.S.C. § 1503 (1982), the statute proscribing obstruction of justice in a judicial proceeding, and cases interpreting section 1503 are relevant to constructions of section 1505. *See United States v. Browning, Inc.*, 572 F.2d 720, 723, 725 (10th Cir.) (sections 1503 and 1505 prohibit similar conduct, and the meaning of "corruptly" in both statues is broad), *cert. denied*, 439 U.S. 822, 99 S.Ct. 88, 58 L.Ed.2d 114 (1978). The failure to provide documents is a violation of section 1503, *United States v. Lench*, 806 F.2d 1443, 1445 (9th Cir.1986), and is similarly a crime under section 1505.

### (1) Evidence that GDL Records Were Concealed in Laurins' Home

■ Laurins claims that the only evidence that the records found in his home were those called for in the IRS summons of January 4, 1984, was testimony by a former Union Street employee. The IRS agent investigating GDL, however, also testified that the records were those requested in the summons, and consisted of investor files, many signed by Laurins.

Laurins further claims that eighty to ninety percent of the "customer files" in GEX 70 consisted of material not in existence when the summons was issued, and that the remainder was the property not of GDL but of Co-op Investment Bank as trustee for the Mortgage Guaranty Trust. A former employee of one of the companies at Union Street testified, however, that GEX 70 contained GDL investor files that he had prepared beginning in January of 1984, and that in April or May of 1984 Laurins ordered him to box up the files and later removed them from the office. Laurins explained that he had stored the cargo container records in his home, and that in January 1984 he brought those records into the office so that employees could prepare client statements for 1983. Those records were part of GEX 70. He characterized the bulk of the documents as records of the Co-op Investment Bank, supporting loans made for the cargo container program.

■ Co-op Investment Bank, in which Laurins had an ownership interest, was another of the Co-op Banking Group companies, and according to Laurins financed the purchase of the containers. GDL's records of purchase and loans nevertheless would qualify as GDL records under the summons, which called for the production of all evidence of indebtedness including collateral agreements between GDL "or any related company" and the investors. Viewing this evidence in the light most favorable to the government, a rational jury could conclude that the files in Laurins' possession contained a substantial amount of material covered by the summons. That some of the files belonged to other corporations or were created after the summons issued is not determinative, because there was competent evidence that significant amounts of material were GDL records predating the summons.

### (2) Specific Intent

■ The specific intent required for obstruction of justice under sections 1503 and 1505 is that defendant must have acted "corruptly," *i.e.*, that the act must be done

with the purpose of obstructing justice. *See United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). Concealing documents falls within this definition. *Id.* Laurins testified that he intended to wait for the government to summon him personally and then assert his fifth amendment privilege. He therefore claims that he did not intend to obstruct justice. There was ample evidence at trial, however, that Laurins had concealed GDL's files after the summons was issued, with the permissible inference that his intent was to frustrate the enforcement of the IRS summons. That part of his motive may have been to wait until he was personally summoned and then to assert a privilege does not negate the evidence of a corrupt motive. The Supreme Court recently reaffirmed that the custodian of corporate records may not claim the fifth amendment to resist a subpoena for corporate records, whether the subpoena is directed to the corporation or to the custodian. *Braswell v. United States*, —— U.S. ——, 108 S.Ct. 2284, 2290, 101 L.Ed.2d 98 (1988); *see also Wilson*, 221 U.S. at 384–85, 31 S.Ct. at 545–46.

Laurins also claims that the government should have served him personally as a third-party recordkeeper under 26 U.S.C. § 7609 (1982) or as a custodian under 26 U.S.C. § 7602 (1982). A third-party recordkeeper must be engaged in the making or keeping of records for the taxpayer's purpose; an attorney may be a third-party recordkeeper only if he is the taxpayer's attorney. *United States v. Joseph*, 829 F.2d 724, 729 (9th Cir.1987). Laurins does not explain why he should be considered a third-party recordkeeper, and he does not fit any of the categories listed in section 7609(a)(3). Although Laurins testified in an October 1984 state court proceeding that he was GDL's counsel in 1983, he also testified that he had ceased to be counsel when he appointed Lee. Nor does Laurins indicate why removal and concealment of the GDL records makes him a custodian who is insulated from liability for obstruction of justice related to the GDL summons. A rational jury could find beyond a reasonable doubt that Laurins intended to obstruct justice. *See Lench*, 806 F.2d at 1446.

## II. Judicial and Prosecutorial Misconduct

Laurins claims that judicial and prosecutorial misconduct denied him a fair trial. Our review of the entire trial transcript convinces us that no reversible misconduct occurred.

### A. The Judge's Conduct

A federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if it abuses that discretion. *United States v. Greene*, 698 F.2d 1364, 1375 (9th Cir.1983). A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition. *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir.1986). A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality. *Id.*

■ Laurins first complains that the judge conveyed the impression that Laurins had a duty to volunteer the records in GEX 70, citing examples of the judge's attempts to "clear up" the defense's position as to whether GEX 70 was or was not composed of GDL records. These questions by the judge appear to be entirely legitimate efforts to clarify a central issue in the case for the jury.

■ Laurins then assigns as error the judge's sixty interruptions of the prosecutor to "assist" him, while defense counsel received this "assistance" only sixteen times. The judge's interjections do not leave an impression that the interruptions showed partiality or helped the prosecutor at Laurins' expense. In fact, the judge frequently expressed exasperation at the prosecutor's methods, and so it is more likely that the interruptions disturbed the prosecution. *See United States v. Harris*, 501 F.2d 1, 10–11, & n. 20 (9th Cir.1974)

(where interruptions of defense counsel aided prosecution, cumulative effect could have influenced jury); *United States v. Malcolm*, 475 F.2d 420, 427–28 (9th Cir. 1973) (defense counsel disturbed by court's interruptions). Laurins' further claim that the judge showed partiality by asking the prosecutor if he had established obstruction of justice fails. Upon defense counsel's objection, the judge cured any harm by acknowledging the correctness of the objection and immediately excusing the jury before discussing the issue further.

■ Finally, Laurins' argument that the judge's refusal to hold bench conferences justifies a new trial also fails. It is within the court's discretion whether to conduct side-bar discussions, and Laurins does not show an abuse of that discretion. *United States v. Wellington*, 754 F.2d 1457, 1469 (9th Cir.) (failure to hold side-bar discussions not error), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 573 (1985).

The district judge also specifically instructed the jury not to assume that his questions expressed any opinion on the case. Although the defense moved for a mistrial, it made only one reference to the judge's conduct. We have reviewed the transcript. *See Harris*, 501 F.2d at 11 n. 20. The judge managed the trial with fairness and a concern for clarity. We find there was no judicial misconduct.

### B. The Prosecution's Conduct

■ A computer found at Laurins' business address and transported to the Federal Building in San Francisco suffered damage to a hard disk storage device and could not be repaired. Laurins claims the disk contained exculpatory evidence regarding GDL's sale before the summons issued, and that its destruction was reversible error.

■ When the government has destroyed criminal evidence, a reviewing court must balance the quality of the government conduct and the degree of prejudice to the accused. *United States v. Roberts*, 779 F.2d 565, 569 (9th Cir.), *cert. denied*, 479 U.S. 839, 107 S.Ct. 142, 93

L.Ed.2d 84 (1986). The government must justify its conduct and the defense must demonstrate prejudice. *Id.* Where destruction by the government is innocent, although negligent, it is insufficient for reversal unless it bears on an issue central to the case. *See United States v. Kennedy*, 714 F.2d 968, 975–76 (9th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984).

Here, there is no showing that the government intentionally destroyed the disk, and Laurins nowhere established that the disk contained exculpatory evidence. He claims the computer records would have shown the sale of GDL before the issuance of the summons. The evidence at trial was to the contrary. No contract or bill of sale was produced, and GDL's former controller testified that she never had been informed of GDL's sale. In view of the evidence of Laurins' continuing control over GDL, its purported sale to another of the Co-op Banking Group Companies, of which Laurins was managing director, was not a central issue. Laurins has failed to meet his obligation to demonstrate prejudice.

Laurins also points to remarks made by the prosecutor as injecting his personal beliefs at trial and in closing argument. A prosecutor may not express his personal opinion of the defendant's guilt or the credibility of witnesses. *United States v. McKoy*, 771 F.2d 1207, 1210–11 (9th Cir. 1985). If the prosecutor behaved improperly, the issue is whether his behavior, in context, affected the jury's capacity to judge the evidence fairly, or whether it is more probable than not that his conduct materially affected the fairness of the trial. *United States v. Young*, 470 U.S. 1, 12, 20, 105 S.Ct. 1038, 1048–49, 84 L.Ed.2d 1 (1985).

■ In his response to a defense objection to the introduction of testimony by Laurins' former attorney, Lee, the judge asked the prosecutor the basis of an earlier ruling that the attorney-client privilege would not bar Lee's testimony. In response, the prosecutor explained that the court had ruled that the attorney-client

privilege was waived because Laurins had used Lee to perpetrate fraud. The judge promptly withdrew his question and instructed the jury to ignore that reply. This neutralized any harm. *See United States v. Endicott*, 803 F.2d 506, 513 (9th Cir. 1986). Further, as the judge pointed out, the defense objection invited an explanation of the basis for the court's earlier ruling.

■■■ Laurins contends that, in closing argument, the prosecutor made statements that expressed his personal opinions about the strength of the government's case, the credibility of witnesses, and the credibility of the defendant. For example:

> [I]t is for you ladies and gentlemen of the jury to decide the credibility of the witnesses. I don't think there is any evidence that Mr. Lee has lied to you, that somehow he has, after all this, he has testified to you falsely, and the defendant of course, we would argue it's just the opposite.
>
> Also he testified that—I mentioned this before—all these little areas I think are deceptive, that he has lied to you repeatedly.
>
> *     *     *     *     *     *
>
> It's obvious I think that after listening to all the evidence defendant has lied to you consistently throughout. His entire testimony is one big lie and falsity.
>
> I think the evidence is—I think the government has established beyond a reasonable doubt that with respect to count one that he clearly, as an agent or representative, obstructed the Internal Revenue Service investigation of Gold Depository and Loan as soon as that summons was served.....

Laurins asserts that these remarks, coupled with others in the same vein,[2] are improper. He argues that the jury could have understood these statements "as an expression of [the prosecutor's] belief that

the government witness ... was telling the truth and the defendant ... was lying." *McKoy*, 771 F.2d at 1211. In *McKoy*, this court reversed a conviction where a former prosecutor's testimony vouched for defense witnesses, because the prosecutor "has inherent credibility and influence as a spokesman for the United States," and his expressions of opinion could "distort the jury's decision on the question of the defendant's guilt or innocence." *Id.* at 1211–12.

Because the defense in *McKoy* objected to the testimony, *id.* at 1210, reversal was appropriate unless the error was harmless. *Id.* at 1212. Here, however, Laurins' counsel did not object to the prosecutor's summation. We therefore must decide whether these remarks, absent an objection, constitute plain error. *United States v. Lopez*, 803 F.2d 969, 972 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987). Reversal is appropriate if necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process. *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986).

The prosecutor's remarks were not sufficiently egregious as to constitute plain error. Although the prosecutor did express an opinion that Laurins was a liar, he indicated that it is "after listening to all the evidence" that he reached that conclusion. It could have been construed by the jury as a comment on the evidence rather than an assertion of personal belief.

The statements "must be viewed in context" to see whether they affected the fairness of Laurins' trial. *Young*, 470 U.S. at 11, 105 S.Ct. at 1044. If the evidence was so strong that these remarks had no effect on the jury, reversal is not required. *See id.* at 19–20, 105 S.Ct. at 1048–49. The evidence at trial strongly established that

---

2. The prosecutor also stated: "I think the evidence is, after you listen to the defendant, is arrogance, fraud, deceit"; "I think the evidence is clear, that this man will use anyone and lie to anyone to achieve his own purposes. He lies to his lawyer, evidence shows. He lies to you, he lies to the court, in order to achieve—and with no apparent remorse"; "I think his motive and his intent here to obstruct this investigation—here we have a very busy businessman controlling—I think the evidence is absolutely clear that what we have here is a puppeteer"; "I am going to skip to what I think to be just the pattern of deceit and lies that the evidence shows."

Laurins had concealed the records in GEX 70 to prevent their examination by the IRS. Although the prosecutor's remarks may have bordered on impropriety, it is unlikely that the jury was improperly influenced by them, and so no plain error resulted.

### III. The Admission of Evidence

#### A. Motion to Suppress Evidence in GEX 70

■ Laurins claims that the search warrant for his home, issued on the basis of an eighty-five-page affidavit, was so lacking in probable cause that GEX 70 should not have been admitted into evidence. The trial court denied Laurins' motion to suppress following an evidentiary hearing. *United States v. Laurins*, 660 F.Supp. 1579, 1581–83 (N.D.Cal.1987). This court will review *de novo* a motion to suppress. *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir.1986).

In reviewing whether the warrant should have issued, this court will uphold the magistrate's decision if he or she had a substantial basis for concluding that the affidavit established probable cause. *United States v. Angulo–Lopez*, 791 F.2d 1394, 1396 (9th Cir.1986).

Giving the appropriate deference to the issuing magistrate, we find that probable cause existed. The warrant was based in part on information from three Union Street employees of the Laurins companies, all of whom indicated that Laurins frequently would take work and records home. One employee also related that Laurins ordered file cabinets for his home, and that in phone conversations with Laurins while he was at home it was clear that GDL records were at the Clay Street address. An anonymous informant, "Phil Harris," further told the IRS that Laurins kept most of his records at home. "Harris" knew about Laurins' businesses, and some of the events in Laurins' office.

The statements by the anonymous "Phil Harris" about Laurins' business activities, problems in his office, and his tendency to work from home, were corroborated. Harris' information therefore could be considered, with the statements of others, to provide substantial support for the magistrate's conclusion that the warrant was supported by probable cause, under the totality-of-the-circumstances test set out in *Illinois v. Gates*, 462 U.S. 213, 238, 241–42, 103 S.Ct. 2317, 2332, 2333,–34, 76 L.Ed.2d 527 (1983).

#### B. Testimony of Laurins' Former Attorney

Before trial, the government filed a motion to compel the testimony of Lee, Laurins' former attorney. Following a hearing, the trial court found that the attorney-client communications related to Lee's representation of GDL during the summons enforcement proceedings. *United States v. Laurins*, 659 F.Supp. 847, 848 (N.D.Cal. 1987). Lee was also Laurins' attorney at that time. Laurins now claims that the trial judge erred in barring Lee from asserting the privilege, and that the court delved into communications still covered by the privilege.

■ The attorney-client privilege does not protect communications between an attorney and client which further a crime or fraud; this exception applies even where the attorney is unaware that his advice may further an illegal purpose. *United States v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977). The government has the burden of making a prima facie showing that the communications were in furtherance of an intended or present illegality, *id.*, and that there is some relationship between the communications and the illegality. *See In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985). Obstruction of justice is an offense serious enough to defeat the privilege. *Id.* at 401.

■ At trial, Lee testified that throughout the summons enforcement period, Laurins told him that the GDL records were no longer the property of GDL and were out of the country. The district court held that the attorney-client privilege did not exist with respect to those communications because they were made in furtherance of a crime or fraud. *Laurins*, 659 F.Supp. at 848. Lee resigned in December of 1986

when he learned that the records were found in Laurins' home.

Three circuits review for an abuse of discretion a district court's finding of a prima facie case that the communications were in furtherance of illegality. *In re Sealed Case,* 754 F.2d at 399–400; *In re Berkley & Co.,* 629 F.2d 548, 553 (8th Cir. 1980); *Thompson v. United States (In re September 1975 Grand Jury Term),* 532 F.2d 734, 737 (10th Cir.1976). This court has stated that rulings on the scope of the privilege involve mixed questions of law and fact and are reviewable *de novo,* unless the scope of the privilege is clear and the decision made by the district court is essentially factual; in that case only clear error justifies reversal. *United States v. Zolin,* 809 F.2d 1411, 1417 (9th Cir.1987). Under either standard, however, Laurins' claim fails.

The judge found that the deposition testimony of Union Street employees about Laurins' boxing and removal of GDL documents was sufficient to make out a prima facie case for obstruction of justice. All the government needed to show was evidence that if believed by the jury would establish the elements of an ongoing violation. *In re Sealed Case,* 754 F.2d at 399. The evidence presented by the government met that standard. The further determination that the communications were linked with the obstruction of justice is supported by the record. Based on Laurins' representations, Lee mistakenly told the IRS that the records were no longer in San Francisco, and during the summons enforcement proceeding Lee indicated to the court that GDL no longer did business in San Francisco.

Laurins also objects to the use of notes made by Lee for a December 1983 meeting with Laurins to discuss the IRS investigation. He contends that these notes were outside the exception to the privilege and involved "legitimate defense planning by an attorney for consultation by a client concerned about alleged past wrongdoing." At that December meeting, Laurins told Lee that GDL had ceased to operate and that its records had been, or would be, sent

to London. The notes thus were covered by the exception, as they related to Laurins' attempt to obstruct justice by concealing the whereabouts of GDL records.

## C. Evidence of the Nonexistence of the Cargo Containers

■ Laurins next objects to the government's use of evidence that GDL had not purchased the cargo containers that were the subject of the tax shelter. He claims the evidence was not relevant to the charges of contempt and obstruction of justice and was hearsay, and therefore should have been excluded. The government responds that the evidence was admissible under Fed.R.Evid. 404(b) as proof of Laurins' motive for hiding GDL's records.

Evidence of other crimes, wrongs, or bad acts may be introduced as proof of motive under Fed.R.Evid. 404(b), if the government establishes its relevance to an actual issue in the case. *United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir.1985). Such evidence is not admissible, however, if its potential for unfair prejudice to the defendant substantially outweighs its probative value. *Id.*

A district court's decision to admit evidence under Rule 404(b) is reviewed for an abuse of discretion, as is its balancing of the evidence's probative value against its prejudicial harm. *United States v. Feldman,* 788 F.2d 544, 557 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S. Ct. 955, 93 L.Ed.2d 1003 (1987).

At trial, the government introduced evidence that GEX 70 contained no records of any purchase of containers, and Laurins' controller from April 1983 to February 1984 testified that she never saw any documentation of purchases of cargo containers. A Union Street employee testified that in the fall of 1984, Laurins sent him to the island of St. Vincent in the British West Indies to prepare lease income statements, manufacture fake certificates of ownership, and fill out blank checks to create the appearance that containers had been purchased and leased.

This evidence is highly relevant. If the tax shelter was fraudulent, Laurins had a

clear motive to disobey the court order and obstruct the IRS investigation. *See United States v. Sutton,* 732 F.2d 1483, 1493 (10th Cir.1984) (evidence that defendant falsely certified crude oil logically tends to show motive and intent to obstruct justice), *cert. denied,* 469 U.S. 1157, 105 S.Ct. 903, 83 L.Ed.2d 919 (1985). As discussed above, both the contempt and the obstruction charges require willful behavior.

■ The government also offered testimony by the IRS agent investigating GDL that his review of Co-op Investment Bank records showed that the bank did not purchase containers. Laurins' counsel objected that the evidence was hearsay. After initially overruling the objection, the court then granted a motion to strike and instructed the jury to disregard the testimony. Any possible error was cured.

■ As Laurins himself argues, proof of his willfulness and his corrupt intent was necessary for his conviction. The district court did not abuse its discretion in finding that the prejudice to Laurins from the evidence of fraud did not substantially outweigh its clear relevance to Laurins' motive for concealing the records to avoid a tax investigation.

### D. Authentication of GDL Records in GEX 70

Laurins' claim that the GDL records were not properly authenticated is meritless. The GDL name appears on almost every page, and the records were identified by the IRS agent who searched the residence and by the employee who prepared the files.

### IV. Consecutive Sentences

■ Laurins was sentenced to consecutive sentences of five years for obstruction of justice and three years for aiding, abetting, and causing contempt of court. He argues that the consecutive sentences were improper as double punishment for a single act.

Separate punishment is proper if each statutory provision violated "requires proof of a fact which the other does not." *Block-*

*burger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Although the same conduct was the basis for the two counts, proof of contempt of court does not necessarily include proof of obstruction of justice. *See United States v. Woodward,* 469 U.S. 105, 107–08, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985). As discussed above, 18 U.S.C. § 401(3) punishes the disobedience of a court order; 18 U.S. C. § 1505 punishes corrupt obstruction of a pending agency proceeding. Without actually disobeying a court order, an individual could obstruct an IRS investigation by hiding documents sought by the agency. It would also be possible to disobey a court order without obstructing an investigation by a department or agency of the United States, where no such investigation was pending. Nor is there any evidence in either statute that Congress did not intend to allow separate punishments. *See id.* at 108, 105 S.Ct. at 612. The consecutive sentences were proper.

### CONCLUSION

Laurins' conviction is AFFIRMED.