967 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kathryn Louise BARBER, Defendant-Appellant.
 No. 91-10076.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 11, 1991.
Decided July 2, 1992.
 
 Before HUG, CYNTHIA HOLCOMB HALL and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 * Barber argues that the government promised Larson, as part of Larson's plea bargain, to dismiss the charges against Barber if she subjected herself to a polygraph examination. " 'In determining whether a plea bargain has been broken, courts look to what was reasonably understood by [the defendant] when he entered his plea of guilty. If disputed, the terms of the agreement will be determined by objective standards.' " United States v. Pomazi, 851 F.2d 244, 250 (9th Cir.1988) (quoting United States v. Travis, 735 F.2d 1129, 1132 (9th Cir.1984) (quotations and citation omitted)), overruled on other grounds, United States v. Sharp, 941 F.2d 811, 815 (9th Cir.1991).
 
 
 3
 The district court found, as a matter of fact, that the plea agreement did not include the term alleged by Barber, and the transcript of Larson's plea supports that finding. Larson's counsel ratified the prosecutor's statement that disposition of Barber's case was not part of the negotiation underlying the plea bargain. The district court's finding that the plea bargain contained no term relating to Barber was not clearly erroneous.
 
 II
 
 4
 Barber next argues that the district court abused its discretion by admitting a number of items into evidence which tended to rebut Barber's claim that she had no knowledge that the writ of execution was a forgery and that the goods taken from the Los Angeles vault were therefore stolen. We address each item of evidence in turn.
 
 
 5
 * Barber argues that the admission of evidence relating to prior orders of the bankruptcy court was error because it constituted extrinsic evidence of prior bad acts in violation of Fed.R.Evid. 404(b).[1] Having reviewed the entire trial transcript, we find no error on the part of the district court. Barber first argues that the district court erred by admitting Plaintiff's Exhibit 17, an order directing both Larson and Barber to return $14,180.25 to Sabatier. Exhibit 17 was never admitted into evidence, although the government did refer in its opening statement to the circumstances leading up to the issuance of the order.
 
 
 6
 Barber next argues that Plaintiff's Exhibit 18, an order directing both Larson and Barber to return all property seized from Sabatier through writs of execution, was erroneously admitted. After Exhibit 18 was admitted into evidence, it was explained to the jury by the clerk of the bankruptcy court. The government later introduced testimony by Lela Rhodes, Sabatier's assistant, that the property had not been returned to Sabatier as of the time of trial.
 
 
 7
 The orders were admissible to show that Barber continued to possess the stolen property even after she knew it was obtained by illegal means. See United States v. Marvin, 687 F.2d 1221, 1228 (8th Cir.1982) (in food stamp fraud prosecution, evidence of a subsequent fraud that was "vague and ambiguous" admissible to show appellant's "knowledgeable participation" and to establish a link between appellant and his co-defendants), cert. denied, 460 U.S. 1081 (1983); United States v. O'Brien, 601 F.2d 1067, 1070 (9th Cir.1979) (in prosecution for making false statement to Social Security Administration, evidence that defendant had several opportunities to report newfound employment "enough like the charged offense of knowingly making false statements to the government to be probative on the issue of appellant's knowledge, and was properly admitted."). Admission of this evidence did not violate Rule 404(b) because it was relevant to show Barber's knowledge of the fraudulent scheme and the absence of mistake or accident, and its probative value outweighed the potential prejudice. See O'Brien, 601 F.2d at 1070.
 
 
 8
 Finally, Barber complains that the prosecutor's cross-examination of her "as to why she had not returned the art work in Los Angeles and/or Las Vegas to the bankruptcy court, all allegedly in vilolation of bankruptcy court orders," violated Rule 404(b). This questioning was also admissible, for the same reasons that the orders themselves were admissible. Thus, we find no error by the district court.[2]
 
 B
 
 9
 Barber also challenges the admission of testimony by Sabatier that Barber had called Sabatier in France before the trial and threatened him in an attempt to prevent him from testifying. The district court did not abuse its discretion by admitting this evidence. People v. Ojeda, 758 F.2d 403, 408 (9th Cir.1985) (evidence that defendant offered to compensate witness is relevant "as indicative of a consciousness of guilt").
 
 III
 
 10
 Barber next argues that the prosecutor inappropriately expressed his personal views about the facts and demeaned defense counsel. Because Barber failed to object during the statement, this court reviews for plain error. United States v. Laurins, 857 F.2d 529, 539 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989). We have read both closing statements in their entirety.
 
 
 11
 Barber correctly points out that the prosecutor repeatedly stated his personal beliefs about the facts in his closing statement. In Laurins, however, we held comments similar both in nature and in quantity not to be plain error. Id. at 539-40. Such remarks must be viewed in context to see whether they affected the fairness of the trial. Id. at 539 (citing United States v. Young, 470 U.S. 1, 11 (1985)).
 
 
 12
 Here, prosecutor Barr clearly behaved improperly by repeatedly stating his personal view of the facts. See Laurins, 857 F.2d at 538 (prosecutor may not express personal opinion of defendant's guilt or of credibility of witnesses). On each occasion that he did so, however, he reiterated that the jury was to make up its own mind. See Young, 470 U.S. at 11-14 (in context, improper expressions of personal belief by both sides in closing argument not plain error). The jury's fact-finding role was unlikely to be usurped by these improper statements. See id. at 16 (When improper argument is not subject to contemporaneous objection, reversal is appropriate only if the impropriety "undermine[s] the fundamental fairness of the trial and contribute[s] to a miscarriage of justice.").[3]
 
 
 13
 Barr's statement that "there was some evidence that was not admitted" as a result of objections was also improper. But Barber again failed to object. We find no plain error because the fundamental fairness of the trial was not undermined.
 
 
 14
 Finally, Barber argues that the prosecutor's reference to "smoke in mirrors" and Barr's reference during trial to "tactical games" constituted disparagement of counsel sufficient to warrant reversal. Barber cites to Bruno v. Rushen, 721 F.2d 1193 (9th Cir.1983), cert. denied, 469 U.S. 920 (1984), to support her argument. In Bruno, however, the prosecutor "lunged into a vicious attack" and referred to defense counsel as malleable puppets. Id. at 1194. The defendant objected to this portion of the argument. Moreover, the prosecutor in Bruno implied that the very act of hiring defense counsel constituted consciousness of guilt. Id. We find no plain error in this case.
 
 IV
 
 15
 Barber next argues that the district judge abused his discretion by limiting Barber's cross-examination of Sabatier. We have read the entire transcript of Sabatier's testimony and believe that the judge was quite liberal in allowing impeachment of Sabatier's credibility. Moreover, Barber overstates the importance of Sabatier as the "key" government witness. Sabatier did not witness any of the acts for which Barber was convicted; his testimony was necessary only to establish that the value of the stolen property was more than the $5,000 jurisdictional requirement of the interstate transportation charge.
 
 
 16
 Barber's challenges to the district court's control of Sabatier's cross-examination are meritless because in each instance she succeeded in having Sabatier himself state the proposition which she sought to prove.[4] Barber succeeded in eliciting testimony that Sabatier's business in Las Vegas was a dismal failure and that he could not pay the rent on his business premises. The record shows Sabatier twice offering to display his French bar identification and Barber's counsel refusing it. Barber did not press the issue after Sabatier's offer. Finally, Sabatier admitted on cross-examination that the widow of a famous artist had disputed Sabatier's claim that he had represented the artist.
 
 
 17
 The judge's refusal to allow the question about Sabatier's utterance of an obscenity to Barber followed an admission by Sabatier that he obviously disliked Barber because she refused to make payments on the house and had sued him in bankruptcy court. The judge was acting within the realm of permissible discretion when he controlled the scope and length of Barber's cross-examination of Sabatier.
 
 V
 
 18
 Barber argues that the district court denied her effective assistance of counsel by denying her request for a continuance. Barber's primary argument here is that Mark Tratos, a Las Vegas art attorney, could have testified that the artwork contained in the Los Angeles vault was worth less than $5,000 (the jurisdictional requisite of the interstate transportation charge). Barber suffered no prejudice from the delay and would not have succeeded in her objective even if the continuance had been granted. Tratos testified at sentencing, nearly four months later, and only stated that he suspected that the works might not be authentic. It was in that context that he stated the works would be virtually worthless if they were not authentic. Thus, even after four months, Barber's attorneys failed to produce strong evidence that the stolen artwork was worth less than the jurisdictional limit. Thus, Barber does not appear to have suffered any prejudice. See United States v. Flynt, 756 F.2d 1352, 1359 (9th Cir.), modified, 764 F.2d 675 (9th Cir.1985) (requiring a showing of prejudice).
 
 
 19
 Even if Barber suffered prejudice, the judge's finding that two and a half weeks was sufficient time to prepare for this trial does not constitute an abuse of discretion. The issues were not complicated. Moreover, Sabatier traveled from France to testify and would therefore have been inconvenienced by a sudden continuance of the trial. See United States v. Shuey, 541 F.2d 845, 847 (9th Cir.1976) (six witnesses traveling to Hawaii from Texas support denial of last-minute request for continuance premised on the ground that appellant's attorney had a heart condition), cert. denied, 429 U.S. 1092 (1977).
 
 
 20
 Barber also argues, almost in passing, that denial of the continuance resulted in ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Barber has made no showing of specific errors. See id. at 690. Moreover, ineffective assistance claims are ordinarily heard on collateral review because this court needs a factual record concerning counsel's performance to be developed by the district court. See United States v. Wagner, 834 F.2d 1474, 1482-83 (9th Cir.1987). No such record exists here. Thus, Barber's claim of ineffective assistance is meritless.
 
 VI
 
 21
 Barber argues, finally, that the district court abused its discretion by denying her motion for mistrial. By this circuitous method, she raises without further argument two issues not already considered. We do not condone this method of raising an issue before this court, but our review of these issues reveals that they are without merit.
 
 
 22
 Barber first argues that she was entitled to a bill of particulars in order to apprise her of the particular facts which would support the government's theory. We agree with the district court that since Barber has alleged no particular instances in the trial during which she was prejudiced by the asserted error that any error was harmless.
 
 
 23
 Barber next argues that the district court's instruction on aiding and abetting improperly subjected her to the risk of being held liable for an omission. Barber cites only to United States v. Avila-Macias, 577 F.2d 1384 (9th Cir.1978), to support her contention. Avila-Marcias merely quoted an appropriate instruction and did not purport to make any deviance from that particular instruction reversible error. Id. at 1390 & n. 5. The district court's instruction was drawn from Devitt and Blackmar's Federal Jury Practice and Instructions and we have previously approved of it. See United States v. Marshall, 532 F.2d 1279, 1287 (9th Cir.1976).
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At the time of Barber's trial, Rule 404(b) provided:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [2]
 This assignment of error by Barber, moreover, is academic because Barber was never made to answer this question. Defense counsel interrupted the government in mid-question and, even though the district court overruled Barber's objection, the government thereafter abandoned this line of questioning and did not even refer to the bankruptcy court orders in its closing statement
 
 
 [3]
 That is not to say, however, that Barr's behavior was not a violation of professional standards. "The kind of advocacy shown by this record has no place in the administration of justice and should neither be permitted nor rewarded...." Young, 470 U.S. at 9. At oral argument, this court advised Mr. Barr of the importance of adhering to this ethical rule
 
 
 [4]
 In her reply brief, Barber argues that additional credibility evidence about Sabatier was presented at sentencing that she should have been allowed to present at trial. The short answer is that Barber did not attempt to admit the evidence she presented at sentencing, which was the testimony of Las Vegas attorney Mark Tratos