32 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael W. CHEW, Defendant-Appellant.
 No. 93-10382.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 11, 1994.*
Decided July 27, 1994.
 
 1
 Before: WALLACE, Chief Judge, CANBY, Circuit Judge, and KELLEHER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Defendant Michael Chew (Chew) appeals his conviction for fraudulently concealing property in a bankruptcy case in violation of 18 U.S.C. Sec. 152. Chew contends that the district court impermissibly limited his ability to present evidence as to the underlying reasons for the bankruptcy, which he asserts is relevant to his state of mind. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 4
 On October 17, 1985, Chew, along with his brother Patrick, formed Centaur Marketing, Inc. (Centaur). Centaur purchased the assets of a corporation with the same name, owned by Michael and Patrick Chew's parents, in a bulk sale. Centaur manufactured and sold plastic drainage pipe for use in homes and apartment buildings.
 
 
 5
 Centaur was involved in a dispute with its principal supplier, Plastic Processing,[1] over the quality of its wares. Centaur argued that Plastic Processing had sold it substandard plastic, which resulted in Centaur producing inferior pipe.
 
 
 6
 Centaur's second wind was short. Shortly after Michael and Patrick purchased the business, Centaur filed for Chapter 11 reorganization under the Bankruptcy Code. Centaur operated under Chapter 11 until December 1988, when its Chapter 11 reorganization became a Chapter 7 bankruptcy. The bankruptcy court accordingly appointed a trustee to liquidate the bankruptcy estate.
 
 
 7
 By comparing Centaur's bank accounts to its monthly Chapter 11 financial reports, the trustee discovered that a large amount of money was missing from the bankruptcy estate. An analyst determined that approximately $750,000 had been transferred out of Centaur's bank account and into Chew's personal account. The analyst also found that the transferred funds were no longer in Chew's account. The government then charged Chew with eight counts of fraudulently concealing property in a bankruptcy case in violation of 18 U.S.C. Sec. 152.[2]
 
 
 8
 At trial, the defense theory was that Chew did not intend to conceal the missing funds. Rather, Chew claimed that he transferred the money into his personal account to protect it from his nemesis, Plastic Processing, and to fund anticipated litigation and customer refund claims. Accordingly, the defense sought to introduce evidence concerning the pipe dispute and its role in triggering Centaur's Chapter 11 filing.
 
 
 9
 The government filed a motion in limine, seeking to exclude evidence related to the pipe dispute. At the related hearing, the court stated that it would allow Chew to present evidence for three purposes: (1) to show that Centaur's creditors were aware of Chew's fund transfers; (2) to show that Chew relied on the advice of counsel in transferring funds; (3) to show that Chew was truly segregating funds in anticipation of litigation or customer claims. The court also repeatedly stated, however, that Chew could not present evidence as to the merits of Centaur's dispute with its supplier.
 
 
 10
 At trial, the district court sustained numerous government objections to defense counsel's arguments and cross-examination questions on relevancy grounds. The jury convicted Chew on all eight counts of concealing bankruptcy assets. Chew timely appeals, alleging that the court's exclusion of evidence regarding Centaur's pipe dispute precluded him from presenting an effective defense and violated his right to effective cross-examination of witnesses. Chew also contends that the court created a pervasive atmosphere of unfairness that prejudiced him before the jury.
 
 II.
 DISCUSSION
 A. Exclusion of Evidence
 
 11
 Chew first challenges the district court's decision to exclude evidence related to the pipe dispute, and also contests the numerous evidentiary rulings at trial that sprang from this decision. "We review the district court's decisions balancing the probative value of evidence against its prejudicial effect for abuse of discretion." United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989). The district judge is given wide latitude in making this determination. United States v. Layton, 767 F.2d 549, 553-55 (9th Cir.1985).
 
 
 12
 The district court here acted entirely within its discretion. The existence of the pipe dispute may well have been somewhat relevant to Chew's state of mind, and the court was willing to admit evidence on that score. The details and merits of that dispute were another matter entirely. Prolonged presentations on plastic, pipe, and production processes might have distracted the jury from Chew's concealment or confused the jury as to whose conduct was at issue, Chew's or his creditor's. Indeed, the jury might even have decided that Centaur's assets were better off with Chew than with his nemesis, and that he was entitled to use illegal means to reach that end. The district court rightly excluded evidence of this collateral dispute as more prejudicial than probative.
 
 
 13
 Chew contends that the district court's ruling was confusing in that it allowed him to present some state-of-mind evidence and did not clearly delineate the forbidden territories. This argument lacks merit. The court thrice told Chew that evidence going to the merits of his dispute with the supplier was inadmissible. The related hearing ended with the following exchange:
 
 
 14
 THE COURT: I understand, if he's going to say I had all this, I was worried about these claims as a result of defective pipe, and, therefore, I saved the money to pay it off, and I assume the evidence will show that's what he did with the money if it disappeared somewhere. But I don't think we're on any different track. We're not going to go out and try that lawsuit.
 
 
 15
 [DEFENSE COUNSEL]: I understand that.
 
 
 16
 (ER 53-54.)
 
 
 17
 Chew next contests numerous evidentiary rulings at trial related to the district court's decision. Most of these challenges are conclusory.[3] The remaining challenged rulings are completely consistent with the district court's underlying evidentiary decision. The court allowed Chew to present ample evidence as to his relationship with Plastic Processing, the existence of a dispute, and his intent in secreting company funds. The court did not abuse its discretion.
 
 B. Limitation of Cross-Examination
 
 18
 Chew next contends that the district court violated the Confrontation Clause by using its evidentiary ruling to limit the scope of his cross-examination. The district court's decision restricting the scope of cross-examination is reviewed for an abuse of discretion. United States v. Dischner, 974 F.2d 1502, 1514 n. 12 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993). The district court has "considerable discretion to limit cross-examination in order to prevent delay or avoid cumulative evidence." Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir.1992) (en banc) (quotation omitted), cert. denied, 113 S.Ct. 1600 (1993). Whether such limitations are so severe as to violate the Confrontation Clause is a question of law reviewed de novo. United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991).
 
 
 19
 Chew's contention is essentially an attempt to cloak his erroneous evidentiary theories in Sixth Amendment garb, and therefore meets the same fate. In United States v. Komisaruk, 885 F.2d 490, 495 (9th Cir.1989) (quotation omitted), this court observed that "a defendant does not possess an unlimited right to cross-examination that is effective in whatever way, and to whatever extent, [he] might wish." The Komisaruk court held that a "trial court may properly exclude evidence on cross-examination that is repetitive or only marginally relevant." Id. (quotation omitted). As discussed in the previous section, the district court did not abuse its discretion in excluding evidence of Centaur's collateral dispute. This decision necessarily extends to evidence elicited through cross-examination.[4]
 
 C. Atmosphere of Partiality
 
 20
 Chew finally contends that the district court, by repeatedly enforcing its evidentiary rulings, created a "pervasive atmosphere of partiality and unfairness" that biased the jury against him. This contention also lacks merit. "A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989).
 
 
 21
 Much of Chew's argument consists of a simple scorecard showing the number of relevancy objections made by the government and sustained by the district court. Clearly, the district court was entitled to rebuff defense counsel's repeated attempts to circumvent its evidentiary ruling. See id. at 537 (trial judge may participate in proceedings in order to "confine counsel to evidentiary rulings"). As Chew's brief points out, the judge's remonstrations became quite stern at times, but this was an appropriate response to defense counsel's obstinacy. Moreover, at the close of trial, the court instructed the jury that it "should not be influenced by [an] objection or by the Court's ruling on it." (Rep. Tr. at 962.) See Laurins, 857 F.2d at 538 (observing that curative instruction may allay jury's possible perception of judicial bias).
 
 
 22
 Chew also points to several occasions on which the district court reminded the jury that the merits of the pipe dispute were not relevant. Again, these were merely attempts to effectuate the court's evidentiary ruling and to further head off any of the confusion that ruling sought to prevent. See id. at 537 (upholding a district judge's questions as "entirely legitimate efforts to clarify a central issue in the case for the jury").
 
 
 23
 Chew next observes that the court twice noted it assumed he would eventually show what he did with the missing funds when he claimed he was merely saving them. Chew contends that this shows the court's bias against his defense. Actually, the court's comments were proper observations as to where Chew's defense would logically lead, and both comments took place outside the presence of the jury.
 
 
 24
 Chew's final challenge relates to the court's statement during trial that his counsel breached an agreement made outside the presence of the jury. Again, this was merely an attempt to enforce an evidentiary ruling. Further, it is unlikely that one such comment over the course of a five-day trial would prejudice defendant before the jury. At any rate, the district court issued a curative instruction stating that the jury "must not read ... into anything the Court may have said or done any suggestion as to ... what verdict you should return." (Rep. Tr. at 959.) See Laurins, 857 F.2d at 538 (noting that curative instruction may alleviate jury's possible perception of judicial bias).
 
 
 25
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The briefs and record also refer to a Hi-Lo Corporation, which is apparently an affiliate or even an alter ego of Plastic Processing. In the interest of clarity, we refer to the two entities collectively as "Plastic Processing."
 
 
 [2]
 The government also charged Chew with twelve counts of making false declarations in Centaur's monthly financial reports. These counts were dismissed before trial. The government further charged Chew's brother Patrick with false declarations and fraudulent concealment. The jury acquitted Patrick on all counts
 
 
 [3]
 Indeed, following several of the challenged rulings, defense counsel was able to repeat the applicable questions after rephrasing them or laying a proper foundation
 
 
 [4]
 Chew relies on Brookhart v. Janis, 384 U.S. 1 (1966), and United States v. Harris, 501 F.2d 1 (9th Cir.1974), for the proposition that restrictions on cross-examination warrant automatic reversal. Neither case is applicable here. The trial court in Brookhart did not allow a defendant to cross-examine any government witness on any matter. Brookhart, 384 U.S. at 4. The trial court in Harris refused, without explanation, to permit defendants to determine an informant's address or to ask the informant questions to demonstrate bias, both clearly relevant areas of inquiry. Harris, 501 F.2d at 7, 11