### In re GRAND JURY PROCEEDINGS.

### Appeal of the CORPORATION.

### No. 96–55344.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1996.

Decided June 27, 1996.

Jason D. Kogan and Gary S. Lincenberg, Bird, Marella, Boxer, Wolpert & Matz, Los Angeles, California, for petitioner-appellant.

George B. Newhouse, Jr. and Clare S. Phillips, Assistant United States Attorneys,

Los Angeles, California, for respondent-appellee.

Before: BRUNETTI and RYMER, Circuit Judges, TANNER,* Senior District Judge.

RYMER, Circuit Judge:

We must decide whether communications between an attorney and client can be "in furtherance of" criminal activity, as they must be to fall within the crime-fraud exception to the attorney-client privilege, even if the attorney is unaware of the crimes and takes no affirmative step that actually furthers them.

Corporation appeals the district court's order requiring its two former corporate counsel, Mary Roe and John Doe, to appear before a federal grand jury to answer questions about confidential communications they had with corporate personnel regarding the employment status and form of compensation of an employee of Corporation.[1] The district court found that the communications were in furtherance of and related to the targets' ongoing immigration and tax crimes and were therefore within the crime-fraud exception to the attorney-client privilege.

We hold that otherwise privileged communications can be "in furtherance of" criminal activity, and therefore within the crime-fraud exception, even though the attorney is unaware of the crime and takes no affirmative step that actually furthers it. As we agree with the district court that the government made a *prima facie* showing that the crime-

fraud exception applies here, and as we have jurisdiction under 28 U.S.C. § 1291 of an order compelling an attorney to testify before a grand jury about matters claimed to be privileged, *In re Grand Jury Subpoena, 92–1(SJ)*, 31 F.3d 826, 829 (9th Cir.1994), we affirm.

I

Corporation, its president ("Mrs. C"), and two employees ("Mr. and Mrs. T"), are the targets of a federal grand jury investigation into immigration and tax crimes. According to the government, Mr. and Mrs. T are under investigation for federal tax evasion and Corporation and Mrs. C are under investigation for conspiracy to commit tax evasion and to impair and impede the lawful functioning of the Immigration and Naturalization Service by willfully employing Mrs. T in the United States when they knew that she lacked the necessary visas or work permits.

In connection with this investigation, the government served grand jury subpoenas on Roe and Doe. Corporation moved to quash the subpoenas, invoking the attorney-client privilege and the attorney work-product doctrine. The government opposed the motion to quash and filed its own motion to compel, arguing that the testimony sought from the lawyers fell within the crime-fraud exception. In support, the government submitted material which the district court reviewed *in camera*.

The district court denied Corporation's motion to quash and granted the government's motion to compel in large part. Assuming that the communications were privileged,[2] the court found that "[t]he government has established a prima facie case that the legal advice of [Doe] and [Roe]

---

* Hon. Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

1. All documents and briefs in this matter have been filed under seal to protect the secrecy of the ongoing grand jury proceedings. The true names of the appellant corporation, its two former in-house attorneys, and its other relevant personnel are not revealed in this opinion. *See In re Grand Jury Subpoena 92–1(SJ)*, 31 F.3d 826, 826 n. 1 (9th Cir.1994).

2. As the government argues, assuming that all the communications within its request were privileged was generous, as what the attorneys communicated to the INS or observed about Mrs. T may not in fact be protected. But it makes no difference in this case which issue the district court reached first, as the district court no doubt figured when it decided to assume that the privilege applies and to cut to the chase directly. Going first to the crime-fraud exception may not always be the most prudent course, however, as to do so runs the risk of expositing (and thereby expanding) that exception unnecessarily.

was sought in furtherance of, and was sufficiently related to, ongoing immigration and tax crimes. Accordingly, the crime-fraud exception to attorney-client privilege applies." The court also concluded that the crime-fraud exception applied to the *fact* work product of Roe and Doe but not to their *opinion* work product because the government had not made a *prima facie* showing that Roe or Doe knew that Mrs. T was working for and receiving paychecks from Corporation during the time they assisted it in obtaining her work authorization.[3] For these reasons, the court ordered testimony by Roe and Doe having to do with (1) identification of documents they prepared or furnished to the INS in connection with obtaining work authorization for Mrs. T while she was employed by Corporation and conversations with United States government personnel about Mrs. T's immigration status; (2) communications among or between Roe or Doe, Mrs. C, Mrs. T, and other personnel of Corporation regarding Mrs. T's immigration status and attempts to obtain INS work authorization for her; and (3) communications among the same persons regarding how Corporation compensated Mrs. T during the time she was not authorized to work in the United States. Corporation timely appeals.

## II

Whether we review a district court's conclusion that the government has made a *prima facie* showing that communications were made in furtherance of a crime *de novo* or for an abuse of discretion appears to be an open question in this circuit. *United States v.*

Laurins, 857 F.2d 529, 541 (9th Cir.1988), cert. denied, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). We need not resolve it, however, because under either standard, we conclude that the government has met its burden.

## III

The parties do not dispute the applicable rule: To invoke the crime-fraud exception successfully, the government "has the burden of making a prima facie showing that the communications were in furtherance of an intended or present illegality ... and that there is some relationship between the communications and the illegality." *Laurins,* 857 F.2d at 540 (citations omitted).[4]

Corporation, however, contends that the government did not show that the communications were made "in furtherance of" the Corporation's ongoing or intended immigration or tax crimes for a number of reasons: It can't be that there is no attorney-client privilege whenever an attorney assists a client in legalizing an employee's employment status if at the time the appropriate application is submitted to the INS the employee is allegedly illegally employed; the government didn't show that there was any communication which was in itself in furtherance of any crime (that is, there is no showing that either lawyer made any false representation to the INS in connection with the submission of Mrs. T's application); Roe and Doe were not aware of Mrs. T's employment arrangement and did not take an affirmative step that in fact facilitated commission of the crimes; and as neither knew about her sta-

---

3. This part of the court's order, pertaining to opinion work product, which it said "is comprised of the attorney's mental impressions, opinions, judgments, and legal theories," is not before us on this appeal.

4. *In re Sealed Case,* 754 F.2d 395 (D.C.Cir.1985), from which we derived the rule in *Laurins,* set out a two-step inquiry: the party who seeks to invade the privilege "must first make a prima facie showing of a violation sufficiently serious to defeat the privilege, and second, establish some relationship between the communication at issue and the prima facie violation." *Id.* at 399 (footnote omitted). Other circuits have articulated a similar two-part test. In *In re Grand Jury Investigation (Schroeder),* 842 F.2d 1223 (11th Cir.

1987), for example, the Eleventh Circuit held that "[f]irst, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *Id.* at 1226. *See also In re Int'l Systems and Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1242 (5th Cir.1982); *In re Murphy,* 560 F.2d 326, 338 (8th Cir.1977).

tus, the government failed to show that any communication was in furtherance of a tax or immigration offense. Corporation also suggests that the district court substituted "relevance" for "in furtherance," thereby incorrectly concluding that testimony by Roe and Doe should be compelled just because it is relevant to, instead of because it was "in furtherance of," criminal activity.

Because all of Corporation's points have to do with the *attorney*'s knowledge, state of mind or actions, we disagree that the district court erred since it focused, quite properly, on the *client.*

### A

■ The protection afforded by the attorney-client privilege does not extend to any communication "in furtherance of intended, or present, continuing illegality." *United States v. Hodge & Zweig,* 548 F.2d 1347, 1354 (9th Cir.1977) (citations omitted). While there is a societal interest in enabling clients to obtain complete and accurate legal advice, which we serve by sheltering confidential communications between client and attorney from public consumption, there is no such interest when the client consults the attorney to further the commission of a crime or fraud. *In re Grand Jury Proceedings (John Doe),* 867 F.2d 539, 541 (9th Cir.1989). Thus the crime-fraud exception insures that the confidentiality enveloping the attorney-client relationship does not encompass communications "made for the purpose of getting advice for the commission of a fraud or crime," *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2627, 105 L.Ed.2d 469 (1989) (internal quotation and citation omitted), but the exception does not sweep so broadly that it discourages clients from "mak[ing] full disclosure to their attorneys of *past* wrongdoings, in order that the client may obtain the aid of persons having knowledge of the law and skilled in its practice." *Id.* at 562, 109 S.Ct. at 2626 (internal quotations and citations omitted) (emphasis added).

■ To trigger the crime-fraud exception, the government must establish that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." *In re Sealed Case,* 754 F.2d at 399 (citations omitted). The government is not obliged to come forward with proof sufficient to establish the essential elements of a crime or fraud beyond a reasonable doubt, *United States v. Friedman,* 445 F.2d 1076, 1086 (9th Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971), since the crime-fraud exception does not require a *completed* crime or fraud but only that the client have consulted the attorney in an *effort* to complete one. *In re Grand Jury Subpoena Duces Tecum (Marc Rich & Co. A.G.),* 731 F.2d 1032, 1039 (2d Cir.1984). On the other hand, it isn't enough for the government merely to allege that it has a sneaking suspicion the client was engaging in or intending to engage in a crime or fraud when it consulted the attorney. A threshold that low could discourage many would-be clients from consulting an attorney about entirely legitimate legal dilemmas. Rather, the district court must find "reasonable cause to believe" that the attorney's services were "utilized ... in furtherance of the ongoing unlawful scheme." *In re Grand Jury Proceedings,* 867 F.2d at 541.

■ As we have previously said, for the crime-fraud exception to apply, "the attorney need not himself be aware of the illegality involved; it is enough that the communication furthered, or was intended by the client to further, that illegality." *Friedman,* 445 F.2d at 1086; *see also Hodge & Zweig,* 548 F.2d at 1354 ("The crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose."). Inasmuch as today's attorney-client privilege exists for the benefit of the client, not the attorney,[5] it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception;

---

5. The original justification for the privilege was to preserve the "honor" of the attorney as a professional gentleman. *See* 8 J. Wigmore, *Evidence in Trials at Common Law,* § 2290 at 543 (McNaughton rev. ed.1961). Later, to survive

the onslaught that befell the other privileges founded on that rationale, the privilege reinvented itself as existing for the benefit of the client. *Id.*

the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply. It is therefore irrelevant, for purposes of determining whether the communications here were made "in furtherance of" Corporation's criminal activity, that Roe and Doe may have been in the dark about the details of that activity.

▬▬▬ Corporation's argument that communications with Roe and Doe could not have been "in furtherance of" criminal activity because neither attorney took an *affirmative* step that *actually* furthered the crimes [6] fares no better. The crime-fraud exception does not require that the attorney have participated, even unwittingly, in the client's criminal activity. A communication between client and attorney can be "in furtherance of" the client's criminal conduct even if the attorney does nothing after the communication to assist the client's commission of a crime, and even though the communication turns out not to help (and perhaps even to hinder) the client's completion of a crime. Moreover, inasmuch as the government need not establish, for purposes of the crime-fraud exception, that the crimes succeeded, *see In re Grand Jury Subpoena Duces Tecum (Marc Rich & Co. A.G.)*, 731 F.2d at 1039 ("[i]f a fraudulent plan were ineffective, the client's communications would not thereby be protected from disclosure"), the government is not required to prove that the communications with Roe or Doe *in fact* helped the targets commit the crimes.

Finally, Corporation relies on the Second Circuit's decision in *In re Richard Roe, Inc.*, 68 F.3d 38 (2d Cir.1995), which held that communications do not come within the crime-fraud exception merely because they are relevant to the client's alleged criminal or fraudulent activity, *id.* at 40, to argue that the district court incorrectly applied a "relevance" test. We don't read the court's order this way, however. Based on its in camera review of the government's evidence, the court first found reasonable cause to believe that communications between counsel and

the targets were in furtherance of and closely related to the alleged immigration crimes; then it found reason to believe that any privileged communications dealing with Mrs. T's immigration status are relevant to whether she was an employee of Corporation, and thus are also relevant to the allegations of tax evasion based on her receipt of funds from Corporation; and then it concluded that the government established a prima facie case that the legal advice of Roe and Doe was sought in furtherance of and was sufficiently related to ongoing immigration and tax crimes. By this analysis the court simply tied communications about Mrs. T's employment status to both immigration problems and tax problems; it did not substitute "relevance" for "in furtherance" but explicitly acknowledged, and applied, our requirement that the crime-fraud exception applies only to communications "in furtherance of intended, or present, continuing illegality." *Hodge & Zweig*, 548 F.2d at 1355.

### B

▬▬▬ We have examined the in camera submission, and we agree with the district court that the government has made a *prima facie* case for application of the crime-fraud exception to the matters the court ordered disclosed. The evidence shows that the corporate targets consulted counsel about Mrs. T's employment status shortly after another employee told Mrs. C of the likely illegality of the existing situation. Corporation did not stop its alleged criminal conduct with regard to Mrs. T, but continued to employ her illegally. When Corporation, through Roe, corresponded with the INS in September and October of 1991 about its petition to legalize Mrs. T's employment, it did not disclose that Mrs. T already had been working in Corporation's U.S. office illegally for more than a year.

We further agree that since the in camera evidence gives rise to reasonable cause to believe that communications between counsel and the targets were in furtherance of and

---

6. Although we assume for purposes of our analysis that neither Roe nor Doe committed an affirmative act, it is not entirely clear that this is so, given that Roe *affirmatively* sent letters to the

INS that didn't disclose the full extent of what the Corporation knew about the existing illegal employment of Mrs. T.

sufficiently related to the crimes under investigation, ordering the appearance of Roe and Doe before the grand jury and their testimony on the areas within the scope of the court's order was proper, whether or not the attorneys knew they were being so used or were in fact so used.

AFFIRMED.