**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,**
Plaintiff,

v.

**Alan L. CERF, Defendant.**

**And Related Counterclaims.**

**No. C–96–20375 SW EAI.**

United States District Court,
N.D. California,
San Jose Division.

Jan. 16, 1998.

---

James H. Fleming, Fleming & Phillips, Walnut Creek, CA, for Plaintiff.

Melvyn D. Silver, Silver & Taube, San Jose, CA, for Defendant.

Sandra R. McIntosh, Trepel & Clark, San Jose, CA, for Anthony J. Trepel.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ALAN L. CERF'S MOTION FOR PROTECTIVE ORDER

INFANTE, United States Magistrate Judge.

### I. INTRODUCTION

Defendant Alan L. Cerf has filed an expedited motion for a protective order (1) precluding Plaintiff Massachusetts Mutual Life Insurance Company from taking the depositions of third-party witnesses Sandra Clamage, Rick Anzalone, George Mageles, Lynn Gross–Cerf, William Dok, Joan M. Pfeiffer, and Anthony J. Trepel; and (2) precluding Plaintiff Massachusetts Mutual Life Insurance Company from obtaining documents from said third-party witnesses by subpoena. For the reasons set forth below, Defendant's motion for protective order is GRANTED IN PART AND DENIED IN PART.

### II. BACKGROUND

This is a declaratory relief action filed by Plaintiff Massachusetts Mutual Life Insur-

ance Company ("Mass Mutual") against Defendant Alan L. Cerf ("Cerf"). In 1995, Cerf filed a claim for disability benefits under two long-term disability insurance policies issued by Mass Mutual. Cerf claims that he became disabled as a result of depression caused by his wrongful termination as a life insurance agent by Central Life Insurance Company ("Central Life") and Pacific Mutual Life Insurance Company ("Pacific"). Mass Mutual concluded that Cerf was not disabled and denied the claim. This declaratory relief action followed. Cerf has filed counterclaims for bad faith and breach of contract.

According to Cerf, he was terminated by Central Life in 1992 because he refused to give false testimony favorable to the company in its litigation with Cerf's former supervisor. Cerf claims that this wrongful termination started his battle with depression. His depression allegedly became worse when he was later wrongfully terminated by Pacific in 1994. Cerf is currently involved in litigation with both Central Life and Pacific. Cerf alleges that Pacific's decision to terminate him in 1994 was related to his refusal to give false testimony on behalf of Central Life and that the reason offered for his termination was pretextual.

Pacific's stated reason for terminating Cerf relates to his alleged misconduct in his marital dissolution case on June 28, 1994. In April 1994, Cerf filed a petition for the dissolution of his marriage to Lynn Gross–Cerf. Cerf was represented by attorney Joan M. Pfeiffer at the commencement of his divorce action. Lynn Gross–Cerf was represented by attorney William Dok. In June 1994, Cerf filed an income and expense declaration in the dissolution case which apparently understated his income. *Fleming Decl., Exh. A.* To verify his income, attorney William Dok subpoenaed Cerf's commission records from Pacific. *Fleming Decl., Exh. B.*

When Cerf learned that William Dok had subpoenaed his records, he allegedly made repeated telephone calls to Pacific's records department to attempt to prevent their production but was unsuccessful. In June 1994, Pacific sent Cerf's commission records to the copy service hired by Mr. Dok. *Fleming Decl., Exh. C.* The records indicate that during the period from 1992 to 1994, Cerf earned more than $1 million in commissions from sales of Pacific life insurance policies. Cerf then allegedly contacted the copy service, Castle Copy Service, and identified himself as attorney William Dok. Cerf told the employees of Castle that he would be coming to their office to personally retrieve the subpoenaed documents. He then apparently retrieved the Pacific documents and falsified them so that they would support his earlier-filed income and expense report. The purportedly falsified records, which show that Cerf earned approximately $550,000 in commission income from 1992 to 1994, are attached as Exhibit D to the Fleming Declaration.

When Mr. Dok received the falsified records, he complained to Pacific. At this point, Pacific hired a private investigator to determine how the commission records had been falsified. The investigator questioned two employees of Castle Copy Service and was told that Mr. Dok had personally retrieved the subpoenaed records on June 28, 1994. The investigator then allegedly conducted a "photo lineup" to determine whether Cerf had impersonated Mr. Dok. The two employees selected Cerf's photograph from the 10 black-and-white photographs the investigator presented to them. On July 20, 1994, the two Castle employees executed a declaration to document the events surrounding the apparent falsification of the Pacific records. *Fleming Decl., Exh. E.* When Pacific learned the details of the incident, it immediately fired Cerf. Also, Cerf's attorney, Joan Pfeiffer, withdrew as his attorney in the dissolution action.

Cerf claims that the entire story concerning his impersonation of attorney William Dok and his falsification of his commission records is a fabrication. In short, Cerf claims that Pacific conspired with Central Life to set him up and that his termination was therefore pretextual. To support his claim, Cerf contends that he was in fact at a viticulture meeting many miles away from Castle Copy Service at the time that he allegedly picked up the Pacific documents. He has identified two alibi witnesses, Rick Anzalone and George Mageles, who will pur-

portedly testify that they saw him at the viticulture meeting on June 28, 1994.

Shortly after Cerf was terminated by Pacific, he filed a claim for disability benefits under the policies issued by Mass Mutual. Cerf contends that his wrongful termination from Central Life and Pacific and the false accusations made against him by those companies have caused him to suffer extreme depression which has rendered him disabled under the terms of the policies.

Mass Mutual filed this declaratory relief action after it determined that Cerf does not, in fact, suffer from depression and that his loss of income is attributable to his inability to find work because of his history of improper and fraudulent sales practices as a life insurance agent. Mass Mutual alleges that Cerf employed improper and fraudulent tactics while he was employed by Central Life, Pacific and, later, Security Life of Denver, such as "churning" and "twisting." *Fleming Decl., ¶ 2(a), (b) and (d).*

## III. DISCUSSION

### A. *Cerf's Expedited Motion for Protective Order*

On December 20, 1997, Mass Mutual served Cerf with notices of third-party depositions. The attorneys have exchanged letters regarding the propriety of these depositions and the subpoenas duces tecum attached thereto. Cerf's expedited motion seeks the entry of a protective order prohibiting Mass Mutual from taking the depositions of these third-party witnesses and obtaining the subpoenaed documents.

Attorney Anthony Trepel, one of the third-party witnesses, has filed a joinder in Cerf's motion for protective order with regard to his scheduled deposition. Trepel wants the Court to issue an order prohibiting the taking of his deposition.

### B. *Cerf's motion for protective order regarding Sandra Clamage's deposition is denied*

Sandra Clamage was Cerf's administrative assistant during the period from 1990 to January 1995. Mass Mutual subpoenaed her for deposition and requested that she produce "[a]ll personal and business canceled checks to CostCo for June 1994, including without limitation June 28, 1994." *Silver Decl., Exh. D.* No other documents were subpoenaed.

Cerf's objection to Ms. Clamage's deposition is based on the lack of relevance of her anticipated testimony. According to Cerf, the only issues relevant to this declaratory relief action are (1) whether he is "disabled" under the terms of Mass Mutual's policies and (2) what his income was prior to his disability. Cerf argues that Mass Mutual intends to ask Ms. Clamage about her knowledge of the June 28, 1994 incident and that such testimony is clearly irrelevant to this case. Cerf cites to Fed.R.Evid. 608(b) to support his position. Fed.R.Evid. 608(b) states, in relevant part, that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character of another witness as to which character the witness being cross-examined has testified.

Cerf explains that Mass Mutual intends to impeach his credibility by introducing "extrinsic evidence" of his other dishonest acts. This tactic, Cerf says, is improper.

Cerf's position is without basis. First, the broad scope of discovery set forth in Fed.R.Civ.P. 26(b)(1) is not limited by rules of evidence. Second, even if the scope of discovery could be restricted by rules of evidence, Fed.R.Evid. 608(b) clearly does not purport to limit discovery because it allows a witness to be cross-examined about specific instances of dishonest conduct. Third, Cerf's argument that evidence regarding his apparent impersonation of attorney William Dok and his falsification of subpoenaed records is inadmissible should be rejected. As Mass Mutual explains in its opposition, Cerf's claim is that his depression was caused by his

*wrongful* terminations by Central Life and Mass Mutual. Mass Mutual's position, on the other hand, is that Cerf does not suffer from depression and that his termination from Central Life and Pacific were justified. Mass Mutual also contends that Cerf has misled his psychiatrists with his elaborate tale of corporate oppression. In other words, their diagnoses are based on the premise that Cerf is telling the truth. Mass Mutual intends to ask Cerf's doctors at trial whether their opinions would be different if they knew that Cerf was lying about the circumstances of his terminations.

Since Mass Mutual is clearly entitled to conduct discovery to prove that Cerf's termination from Pacific was not based on pretextual grounds, Cerf's position that Mass Mutual has no legitimate basis to inquire into the June 28, 1994 incident is incorrect and his motion to preclude Sandra Clamage's deposition is therefore denied.

### C. Cerf's motion for protective order regarding the depositions of Rick Anzalone and George Mageles is denied

Cerf describes Rick Anzalone and George Mageles as casual acquaintances in his motion for protective order. He objects to Mass Mutual's attempt to take their depositions for the same reason that he objects to Sandra Clamage's deposition.

■ On December 20, 1997, Mass Mutual served Cerf with notice that it intended to take the depositions of Rick Anzalone and George Mageles on January 12, 1998 and that the witnesses would be required to produce at their scheduled depositions:

a. All correspondence with Alan Cerf or anyone acting on his behalf regarding the Viticulture Association meeting of June 28, 1994.
b. All records of the persons in attendance at the Viticulture Association meeting of June 28, 1994.

*Silver Decl., Exh. D.* There is nothing inappropriate with these depositions and requests for production. As explained above, Mass Mutual should be allowed to prove that Cerf's disability claim is fraudulent because his termination from Pacific was justified.

Such discovery is also relevant to Mass Mutual's defense of Cerf's bad faith and breach of contract counterclaims.

Accordingly, Cerf's motion for protective order is also denied as to the depositions of Rick Anzalone and George Mageles.

### D. Cerf's motion for protective order to preclude the deposition of his former wife Lynn Gross–Cerf is denied

■ Plaintiff Mass Mutual intends to question Cerf's former wife, Lynn Gross–Cerf, about the June 28, 1994 incident. Mass Mutual has subpoenaed her for deposition and requested that she produce the following documents at her deposition:

a. All documents received by William L. Dok during June or July 1994 and purporting to constitute responses by Pacific Mutual Life Insurance Company from Castle Copy Service in response to a subpena duces tecum served by or at the direction of William L. Dok, Esq., in an action entitled Cerf v. Gross–Cerf pending in the Santa Clara County Superior Court.
b. All documents received from William L. Dok and purporting to constitute responses by Pacific Mutual Life Insurance Company to a subpoena duces tecum served by or at the direction of William Dok, Esq., in an action entitled Cerf v. Gross–Cerf pending in the Santa Clara County Superior Court

Cerf offers three arguments to support his motion for protective order regarding the deposition of his ex-wife. First, Cerf states that her testimony regarding the June 28, 1994 incident is not relevant to this case. As discussed above, this argument is clearly without merit.

■ Second, Cerf argues that the requested discovery is prohibited by Fed.R.Evid. 608. This argument must also be rejected because the questions concerning Cerf's alleged misconduct on June 28, 1994 are not collateral to the substantive issues in this case. The Court finds that the question of whether Cerf was wrongfully terminated by

Pacific is relevant to his present claims of disability resulting from depression.

■ Finally, Cerf argues that his ex-wife should not be deposed and the requested documents should not be produced because this Court previously ruled on February 28, 1997 that Mass Mutual could not obtain documents relating to the divorce action. A copy of the Court's February 28, 1997 order is attached as Exhibit C to the Declaration of Melvyn Silver. In that Order, this Court ruled that Cerf need not respond to requests nos. 7–12 in Plaintiff Mass Mutual's second set of requests for production of documents. A copy of Mass Mutual's second set of requests for production of documents is attached as Exhibit B to the Declaration of Melvyn Silver. The Court concludes that Cerf's final argument is also without merit. In contrast with the broad discovery requests made in Mass Mutual's second set of requests for production of documents, which essentially demanded production of the entire divorce case file, the document requests attached to Lynn Gross–Cerf's deposition subpoena are narrowly drawn and seek only documents relevant to the June 28, 1994 incident.

Accordingly, Cerf's motion for protective order precluding the deposition of Lynn Gross–Cerf and the production of documents at her deposition is hereby denied.

### E. Cerf's motion for protective order regarding the deposition of attorney William Dok is denied

■ William Dok represented Cerf's ex-wife Lynn Gross–Cerf in the dissolution proceedings. The record indicates that Cerf was terminated by Pacific for allegedly impersonating William Dok and falsifying the commission records subpoenaed by him. Since Cerf claims that his depression was caused by Pacific's wrongful termination of his employment and its allegations of his misconduct, the testimony of Mr. Dok is clearly relevant to this case. Therefore, Cerf's motion for an order prohibiting Mass Mutual from taking Mr. Dok's deposition and obtaining documents from him by subpoena is denied.

### F. Cerf's motion for protective order regarding the deposition of Joan Pfeiffer is denied

Attorney Joan Pfeiffer represented Cerf in his divorce case. She was his counsel of record when the June 28, 1994 incident occurred. Mass Mutual now wants to take her deposition in this case. Mass Mutual also wants Pfeiffer to produce the following documents at her deposition:

a. All documents received by Joan M. Pfeiffer during June or July 1994 and purporting to constitute responses by Pacific Mutual Life Insurance Company to a subpena duces tecum served by or at the direction of William L. Dok, Esq., in an action entitled Cerf v. Gross–Cerf.

b. All correspondence and other records of communications with non-clients regarding purported responses by Pacific Mutual Life Insurance Company to a subpena duces tecum served by or at the direction of William L. Dok, Esq., in an action entitled Cerf v. Gross–Cerf and received by William L. Dok during June or July 1994.

c. All correspondence and other records concerning or related to services of Joan M. Pfeiffer which were sought or obtained to enable or aid Alan L. Cerf to commit or plan to commit a crime or fraud.

*Silver Decl., Exh. D.* Cerf contends that the testimony of Ms. Pfeiffer is not relevant and that, even if it were relevant, her deposition should not be allowed because she was his attorney.

### 1. The Federal Rules of Civil Procedure do not prohibit the taking of attorney depositions

■ Fed.R.Civ.P. 30(a) provides that depositions may be taken of "any person." Therefore, there is no express prohibition against the taking of attorney depositions. *See Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986); and *American Cas. Co. of Reading, Pennsylvania v.*

*Krieger,* 160 F.R.D. 582, 585 (S.D.Cal.1995). Courts, however, have cautioned that attorney depositions should be allowed only where the discovery sought cannot be obtained from another source. In *Shelton,* which is generally regarded as the leading case on attorney depositions, the Eighth Circuit Court of Appeals explained the judicial attitude toward such depositions as follows:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, *see, e.g., Fireman's Fund Ins. Co. v. Superior Court,* 72 Cal.App.3d 786, 140 Cal.Rptr. 677, 679 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton,* 805 F.2d at 1327. *See also Krieger,* 160 F.R.D. at 588 ("There are good reasons to require the party seeking to depose another party's attorney to bear the burden of establishing the propriety and need for the deposition."). In this case, however, such concerns do not require the issuance of a protective order because Ms. Pfeiffer did not represent Cerf in this action. Furthermore, she withdrew as Cerf's attorney in the divorce case in 1994. Therefore, Mass Mutual is entitled to take Ms. Pfeiffer's deposition if it can show she has relevant non-privileged information.

### 2. *The crime-fraud exception to the attorney-client privilege*

██ A second issue raised by Mass Mutual's desire to take Ms. Pfeiffer's deposition is whether the crime-fraud exception to the attorney-client privilege applies in this case. In Mass Mutual's third request for production of documents, it requests Ms. Pfeiffer to bring to the deposition "[a]ll correspondence

and other records concerning or related to services of Joan M. Pfeiffer which were sought or obtained to enable or aid Alan L. Cerf to commit or plan to commit a crime or fraud." *Silver Decl., Exh. D.*

Mass Mutual does not specifically identify the purported crime or fraud alleged, but it must be either the fraudulent retrieval and falsification of Cerf's earnings records or the dissolution action itself. Another possibility is that Mass Mutual believes it is entitled to conduct preliminary discovery to determine whether Cerf sought or obtained the legal services of Ms. Pfeiffer to commit a crime or fraud. Based on the present record, the Court concludes that Mass Mutual may not invade the attorney-client privilege as to Cerf's communications with Ms. Pfeiffer because it has not made the necessary *prima facie* showing that the crime-fraud exception applies.

██ In order to traverse the attorney-client privilege, a party must make a *prima facie* showing that the attorney's advice or services were sought or obtained to enable or aid the client to commit a crime or fraud.[1] The *prima facie* standard of proof was established in *BP Alaska Exploration v. Superior Court,* 199 Cal.App.3d 1240, 245 Cal.Rptr. 682, 696–97 (1988). The *prima facie* standard has also been adopted by the Ninth Circuit. *In re Grand Jury Proceedings,* 87 F.3d 377, 380 (9th Cir.1996). In *In re Grand Jury,* the court of appeals ruled a party seeking to pierce the attorney-client privilege must make a *prima facie* showing that:

> [T]he communications were in furtherance of an intended or present illegality ... and that there is some relationship between the communications and the illegality.

*Id.* (quoting *United States v. Laurins,* 857 F.2d 529, 540 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989)). The court of appeals also held:

> To trigger the crime-fraud exception, the government must establish that "the client was engaged in or planning a crimi-

---

1. Since federal jurisdiction is based on diversity, California privilege law applies to this action. California Evidence Code § 956 states that "[t]here is no privilege under this article if the

services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

nal or fraudulent scheme when it sought the advice of counsel to further the scheme." *In re Sealed Case,* 754 F.2d at 399 (citations omitted). The government is not obliged to come forward with proof sufficient to establish the essential elements of a crime or fraud beyond a reasonable doubt, *United States v. Friedman,* 445 F.2d 1076, 1086 (9th Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971), since the crime-fraud exception does not require a completed crime or fraud but only that the client have consulted the attorney in an effort to complete one. *In re Grand Jury Subpoena Duces Tecum (Marc Rich & Co., A.G. v. U.S.),* 731 F.2d 1032, 1039 (2d Cir.1984). On the other hand, it isn't enough for the government merely to allege that it has a sneaking suspicion the client was engaging in or intending to engage in a crime or fraud when it consulted the attorney. A threshold that low could discourage many would-be clients from consulting an attorney about entirely legitimate legal dilemmas. Rather, the district court must find "reasonable cause to believe" that the attorney's services were "utilized . . . in furtherance of the ongoing unlawful scheme." *In re Grand Jury Proceedings,* 867 F.2d at 541.

As we have previously said, for the crime-fraud exception to apply, "the attorney need not himself be aware of the illegality involved; it is enough that the communication furthered, or was intended by the client to further, that illegality." *Friedman,* 445 F.2d at 1086; *see also Hodge & Zweig,* 548 F.2d at 1354 ("The crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose."). Inasmuch as today's attorney-client privilege exists for the benefit of the client, not the attorney, it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception; the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply. It is therefore irrelevant, for purposes of determining whether the communications here were made "in furtherance of" Corporation's criminal activity, that [attorneys] Roe and Doe may have been in the dark about the details of that activity.

*Id.* at 381–82 (footnote omitted). Finally, even if the crime-fraud exception if found to apply, the attorney-client privilege is not completely waived. In *BP Alaska,* the California appellate court explained:

Finally, if the crime-fraud exception does apply, the parties disagree on the extent to which the privilege is lost once the exception is established. In *In re A.H. Robins. supra,* 107 F.R.D. 2, the court held that a prima facie showing of fraud cannot open defendant's files or give plaintiffs carte blanche with respect to attorney-client communications. The documents in question must have a reasonable relation to the ongoing fraud to be discoverable under the crime-fraud exception. (*Id.* at 15.) This is a reasonable rule for the California courts to adopt.

*BP Alaska,* 199 Cal.App.3d at 1269, 245 Cal. Rptr. at 701.

In this case, Mass Mutual has demonstrated that it needs the testimony of Ms. Pfeiffer to prove that Cerf was not wrongfully terminated from Pacific and that his claim of disability is false. Therefore, Mass Mutual may take Ms. Pfeiffer's deposition as a percipient witness. However, Mass Mutual has not shown that the crime-fraud exception should be applied as a partial waiver of the attorney-client privilege. Mass Mutual claims that Cerf, without the assistance of Ms. Pfeiffer, impersonated Mr. Dok and falsified critical documents in his divorce case. The facts indicate that Ms. Pfeiffer promptly withdrew as Cerf's attorney when the document–falsification allegations came to light. She appropriately refused to disclose the reasons for her decision to withdraw. These facts simply do not support Mass Mutual's claim that Cerf consulted Ms. Pfeiffer in order to plan or commit a crime or fraud.

Accordingly, Mass Mutual should be permitted to take the deposition of Ms. Pfeiffer because she is an important percipient witness in this case. Therefore, Cerf's motion to preclude her deposition is denied. Howev-

er, the Court finds that Mass Mutual has failed to show that the crime-fraud exception to the attorney-client privilege applies. Therefore, Mass Mutual's third request for production of documents is hereby ordered stricken from the deposition subpoena.

### G. *Cerf's motion for protective order regarding the deposition of Anthony Trepel is granted*

■ Anthony Trepel and his firm, Trepel & Clark, represented Cerf in each of his four cases. In the divorce case, Mr. Trepel took over after Ms. Pfeiffer withdrew from the case in 1994. Mr. Trepel also represented Cerf in the employment actions against Central Life and Pacific. In January 1997, Mr. Trepel filed a motion in the Santa Clara County Superior Court seeking to be relieved as counsel for Cerf in the case against Pacific. *Fleming Decl., Exh. F.* In the motion, Mr. Trepel stated that he was compelled to withdraw pursuant to Rule 3–700(B) of the Rules of Professional Conduct. Mr. Trepel has also apparently withdrawn as Cerf's attorney in the Central Life case. Finally, Mr. Trepel represented Cerf in the present case until April 1997.

Mass Mutual has subpoenaed Mr. Trepel for deposition and requested the production of the following documents:

a. All correspondence and other records concerning or related to services of Anthony J. Trepel which were sought or obtained to enable or aid Alan L. Cerf to commit or plan to commit a crime or fraud.

b. All declarations and other pleadings concerning or related to services of Anthony J. Trepel which were sought or obtained to enable or aid Alan L. Cerf to commit or plan to commit a crime or fraud.

c. All transcripts and tapes concerning or related to services of Anthony J. Trepel which were sought or obtained to enable or aid Alan L. Cerf to commit or plan to commit a crime or fraud.

*Silver Decl., Exh. D.* In opposition to Cerf's motion for protective order, Mass Mutual argues that it should be allowed to take Mr. Trepel's deposition and subpoena his files (1) because he communicated with Mass Mutual on Cerf's behalf; (2) because he "structured the psychological and psychiatric care which Cerf received during the period for which he claims disability benefits"; and (3) because he had an opportunity to observe Cerf during the period in question and can therefore offer testimony regarding whether, in his judgment, Cerf suffered from depression or any other disability.

In *Shelton,* the Eighth Circuit Court of Appeals held that a party may take the deposition of opposing counsel only if he can show that:

> (1) no other means exist to obtain the information than to depose opposing counsel, *see, e.g., Fireman's Fund Insurance Co. v. Superior Court,* 140 Cal.Rptr. 677, 679, 72 Cal.App.3d 786 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton,* 805 F.2d at 1327. In this case, Mass Mutual has failed to demonstrate that it should be allowed to take Mr. Trepel's deposition.

Mass Mutual has failed to show that Mr. Trepel possesses any relevant nonprivileged information that cannot be acquired from other sources. First, Mass Mutual already has the relevant information pertaining to Mr. Trepel's communications with its claims representatives or in-house counsel on Cerf's behalf. Also, Mass Mutual has not shown why Mr. Trepel's needs to be deposed regarding the "structuring" of Cerf's psychological and psychiatric care. Furthermore, it is entirely inappropriate for Mass Mutual to ask Mr. Trepel to give his lay opinion regarding Cerf's disability because the slight relevance of such testimony is greatly outweighed by the policy considerations underlying the attorney-client privilege.

Secondly, Mass Mutual has not shown that the information sought by the taking of Mr. Trepel's deposition is crucial to the preparation of its case. In this regard, it is important to note that Mr. Trepel apparently has no firsthand knowledge of facts relevant to

the June 28, 1994 incident and Cerf's subsequent termination by Pacific.

 Finally, Mass Mutual has not made a *prima facie* showing to support its contention that the crime-fraud exception to the attorney-client privilege applies to confidential communications between Cerf and Mr. Trepel. *See BP Alaska*, 245 Cal.Rptr. at 696–97 (proponent of the crime-fraud exception must show that the attorney's advice or services were sought or obtained to enable or aid the client to commit a crime or fraud); and *In re Grand Jury Proceedings*, 87 F.3d at 380 (same). In fact, Mass Mutual has not even identified the fraud or crime alleged. Furthermore, Mass Mutual's argument that Mr. Trepel's decision to petition the court for leave to be relieved as Cerf's attorney in the Pacific case supports a finding that the crime-fraud exception applies is without merit. The fact that Mr. Trepel sought to be relieved as Cerf's counsel actually supports the opposite conclusion.

Accordingly, Cerf has sufficiently shown that good cause exists for the issuance of a protective order precluding Mass Mutual from taking the deposition of predecessor counsel, Anthony J. Trepel. Therefore, Cerf's motion for protective order is granted as to the deposition of Mr. Trepel.

## IV. CONCLUSION

For the foregoing reasons, Defendant Alan L. Cerf's motion for protective order is granted in part and denied in part as follows:

1. Defendant's motion to preclude the deposition of third-party witnesses Sandra Clamage, Rick Anzalone, George Mageles, Lynn Gross–Cerf, William Dok and Joan M. Pfeiffer is DENIED.

2. Defendant's motion to quash Mass Mutual's document subpoenas to third-party witnesses Sandra Clamage, Rick Anzalone, George Mageles, Lynn Gross–Cerf, William Dok and Joan M. Pfeiffer is DENIED. However, the third request for production of documents in Mass Mutual's subpoena to Joan M. Pfeiffer IS HEREBY STRICKEN because Mass Mutual has not shown that the crime-fraud exception to the attorney-client privilege applies.

3. Defendant's motion to preclude the deposition of Anthony J. Trepel and to quash Mass Mutual's document subpoena to Mr. Trepel is GRANTED because Mass Mutual has not shown a substantial need for information that is exclusively within Mr. Trepel's possession or control and because Mass Mutual has not shown that the crime-fraud exception to the attorney-client privilege applies.

IT IS SO ORDERED.