In re: GRAND JURY INVESTI-
GATION, Concerning Cor-
poration A, et al.,

United States of America,
Plaintiff—Appellee,

v.

John Doe, Defendant—Appellant.

In re: Grand Jury Investigation,
Concerning Corporation A,
et al.,

United States of America,
Plaintiff—Appellee,

v.

Richard Roe;  Corporation B,
Respondents—Appellants.

In re: Grand Jury Investigation,
Concerning Corporation A,
et al.,

United States of America,
Plaintiff—Appellee,

v.

Corporation A, Defendant—Appellant.

Nos. 06–56517, 06–56560, 06–56599.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 2007.

Filed May 10, 2007.

Before: CANBY and THOMAS, Circuit Judges, and CONLON,* District Judge.

### MEMORANDUM **

Appellants, John Doe, Richard Roe, Corporation A, and Corporation B appeal the district court's Order compelling disclosure, pursuant to a grand jury subpoena, of various categories of communications between the appellants and Corporation A's corporate counsel (the "Law Firm").[1] We have jurisdiction under 28 U.S.C. § 1291. *See In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Litig.,* 857 F.2d 1238, 1240 (9th Cir.1988). We affirm in part, and reverse in part, the district court's decision.

### I. *Richard Roe and Corporation B*

We affirm the Order as it relates to Richard Roe and Corporation B because, both individually and jointly, they have submitted insufficient evidence to carry their burden of establishing an attorney-client relationship with the Law Firm.[2] *See United States v. Gurtner,* 474 F.2d 297, 298 (9th Cir.1973) ("The burden of establishing the existence of an attorney-client relationship rests on the claimant of the privilege who resists disclosure of shielded communication.").

Neither Richard Roe (Corporation B's formal beneficial owner) nor Corporation B had an express attorney-client relationship with the Law Firm. They contend, however, that an attorney-client relationship should be implied because they reasonably believed that the Law Firm was their counsel.[3] Courts in other jurisdictions have recognized that, in limited circumstances, "the [federal] privilege may apply where a party reasonably but mistakenly believes that an attorney represents him rather than another party." *See Munoz,* 233 F.3d at 1128 n. 2 (citing *In re*

---

* The Honorable Suzanne B. Conlon, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. We employ pseudonyms in this disposition to protect the secrecy of the grand jury proceedings. *See In re Grand Jury Subpoena 92–1(SJ),* 31 F.3d 826, 826 n. 1 (9th Cir.1994).

2. We review de novo the district court's determination regarding the applicability of the attorney-client privilege. *United States v. Munoz,* 233 F.3d 1117, 1128 (9th Cir.2000).

3. In support of this legal theory, the appellants rely primarily on cases discussing the applicable rule under California state law. These cases are inapposite because "[i]ssues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Clarke v. Am. Commerce Nat'l. Bank,* 974 F.2d 127, 129 (9th Cir.1992).

*Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 923 (8th Cir.1997); *United States v. Hart,* 1992 WL 348425, at *1–2 (E.D.La. Nov.16, 1992)). We need not decide whether to adopt such a rule because, under any standard, Richard Roe and Corporation B have failed to carry their burden.

As evidence of an implied contract for legal services, Richard Roe and Corporation B rely primarily on a declaration by one of the Law Firm's attorneys stating that the Law Firm "provided assistance to officers, directors, and principle stock holders of [Corporation A], including [Corporation B], in filing [SEC documents related to Corporation A]." Richard Roe and Corporation B do not explain, however, the nature of the Law Firm's "assistance" or how it relates to the communications for which they claim the privilege. Indeed, the only other evidence adduced by Richard Roe and Corporation B is a declaration by Richard Roe himself stating that "all of my communications with [the Law Firm] were made in my capacity of seeking legal advice, either personally or on behalf of [Corporation B]." Standing alone, this self-serving statement does not overcome the government's evidence that the Law Firm's "assistance" to Corporation B was performed merely as an accommodation to its client, Corporation A.

Because neither Richard Roe nor Corporation B carried their burden of showing that they had, or reasonably believed that they had, an attorney-client relationship (express or implied) with the Law Firm, we affirm the district court's determination that the attorney-client privilege is inapplicable to communications between Richard Roe and Corporation B, on the one hand, and the Law Firm, on the other.

## II. *John Doe and Corporation A*

John Doe and Corporation A contend that the district court committed various errors in applying the crime-fraud exception. In particular, they contend that the court erred by: (1) finding that the government made a sufficient evidentiary showing as to the existence of an ongoing or intended crime or fraud; (2) failing to require that each document subject to disclosure was in furtherance of the alleged illegality; and (3) refusing to review *in camera* every document allegedly falling within the exception. In addition, Corporation A argues that, even if the government established reasonable cause to believe that John Doe committed a crime or fraud, the crime-fraud exception does not apply to documents in which it holds either an individual or joint privilege because John Doe's alleged crimes were outside the scope of his agency and were not intended to benefit Corporation A.

■ We have reviewed the record, including the government's *ex parte, in camera* submission, and conclude that the district court did not err in finding reasonable cause to believe that John Doe violated federal securities laws.[4] In particular, there is reasonable cause to believe that John Doe obtained illegal stock loans, in violation of 15 U.S.C. § 78g(f) and the rules promulgated thereunder, manipulated (and caused others to manipulate) the stock of Corporation A, in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5, and made false statements and omissions in filings with the SEC, in violation of 15 U.S.C. §§ 78m(d), 78p(a).[5]

---

**4.** We review de novo the sufficiency of the government's evidentiary showing. *See In re Napster, Inc. Copyright Litig.,* 479 F.3d 1078, 1089–90 (9th Cir.2007).

**5.** We note that the government also alleged mail fraud, wire fraud, and conspiracy. These theories overlap somewhat with the securities fraud allegations, and rely on some of the same evidence. Our review, however,

**695**

■ We reverse the Order as relates to both John Doe and Corporation A, however, because the district court required an insufficient nexus between the documents sought and the alleged illegality. The district court ordered disclosure of otherwise privileged documents and communications on the basis of a showing that: (1) the Law Firm's services were used in furtherance of a crime or fraud; and (2) there is a reasonable relationship between the communications and the illegality. This analysis was improper because the crime-fraud exception applies only to documents and communications that were themselves in furtherance of illegal or fraudulent conduct. *See United States v. Bauer*, 132 F.3d 504, 509–10 (9th Cir.1997) (holding that the exception did not apply to an attorney's advice concerning compliance with bankruptcy filing requirements because the communications were not in furtherance of his client's fraudulent scheme to falsify his bankruptcy petition).

The test employed by the district court is impermissible because it threatens to sweep within the exception entirely legitimate attorney-client communications, as well as privileged communications pertaining only to past wrongdoing. *See United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (clients must be free to make full disclosure to their attorneys of past wrongdoing); *cf. In re Grand Jury Proceedings (The Corporation)*, 87 F.3d 377, 381 (9th Cir.1996) (threshold for applying crime-fraud exception is not so low as to "discourage ... would-be clients from consulting an attorney about entirely legitimate legal dilem-

mas"). Compelled disclosure of these categories of communications would unduly infringe on the attorney-client privilege and frustrate its underlying purpose of "promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

In support of the district court's test, the government relies heavily on *United States v. Chen*, 99 F.3d 1495 (9th Cir.1996), in which we said that "[t]he test for invoking the crime-fraud exception ... is whether there is 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.'" *Id.* at 1503 (quoting *In re Grand Jury Proceedings*, 87 F.3d at 380). Contrary to the government's contention, this passage does not articulate an alternative, less stringent "in furtherance" test that focuses only on the intent in employing attorneys. Rather, it describes the quantum of proof ("reasonable cause") needed to satisfy the government's evidentiary burden. Earlier in the same paragraph, *Chen* stated the requirement that " 'the government has the burden of making a prima facie showing that the *communications* were in furtherance of an intended or present illegality....'" *Chen*, 99 F.3d at 1503 (quoting *In re Grand Jury Proceedings*, 87 F.3d at 380) (emphasis added).

If there was any lack of clarity in some of our precedents concerning the scope of the crime-fraud exception, our recent opinion in *In re Napster* eliminates the uncer-

is limited to the sufficiency of the government's showing regarding the alleged securities violations because, in its Order, the district court did not mention the other alleged crimes and did not find reasonable cause to believe that they were committed. To the extent the government seeks disclosure of

documents or communications that were allegedly in furtherance of mail fraud, wire fraud, or conspiracy (but not the securities violations), the district court on remand may make additional factual findings pertaining to those theories.

tainty. 479 F.3d 1078. There, we offered the following clarification of the relevant standard:

> A party seeking to vitiate the attorney-client privilege under the crime-fraud exception must satisfy a two-part test. First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "*in furtherance* of [the] intended, or present, continuing illegality."

*Id.* at 1090 (internal citations omitted) (emphasis in original).

The district court did not have the benefit of the *Napster* decision. We therefore remand this matter to the district court so that it may determine which, if any, of the documents and communications sought were in furtherance of a crime or fraud. In making this determination, the district court may determine it is necessary to review *in camera* many of the documents in question.[6] We decline, however, to adopt a per se rule requiring *in camera* review of every document allegedly falling within the exception. If, on remand, the district court orders the production of documents or communications in which Corporation A purports to hold either an individual or joint privilege, the court shall identify the legal and factual basis for application of the exception.

### III.   *Conclusion*

For the foregoing reasons, we affirm the Order as relates to Richard Roe and Corporation B. We reverse the Order as relates to John Doe and Corporation A, and remand for further proceedings consistent with this disposition.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

6. Of course, *in camera* review should not be undertaken except upon a showing of "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies...." *Chen,* 99 F.3d at 1503 (internal quotation marks omitted).

